**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| _____ : | |
| CAROL M. HIGHSMITH, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | 16 CIV. 5924 |
| : | |
| GETTY IMAGES (US), INC., : | |
| LICENSE COMPLIANCE SERVICES, : | **JURY TRIAL DEMANDED** |
| INC., : | |
| PICSCOUT, INC., : | |
| ALAMY, INC., : | |
| ALAMY, LTD., and : | |
| JOHN DOES 1 TO 100, : | |
| : | |
| Defendants. : | |
| _____ : | |

## COMPLAINT

Plaintiff Carol M. Highsmith (the "**Plaintiff**" or "**Ms. Highsmith**"), by and through her counsel the GIOCONDA LAW GROUP PLLC and CARSTENS & CAHOON, LLP hereby brings this Complaint against Defendants Getty Images (US), Inc. ("**Getty**"), License Compliance Services, Inc. ("**LCS**"), Picscout, Inc. ("**Picscout**"), Alamy, Inc., Alamy, Ltd. (collectively, "**Alamy**"), and John Does 1 to 100 (Getty, LCS, Picscout, Alamy and John Does 1-100, collectively, the "**Defendants**"), and respectfully alleges as follows upon information and belief, except for allegations regarding the Plaintiff or her counsel:

### NATURE OF CASE

1.    This is a copyright lawsuit brought by distinguished American photographer Carol M. Highsmith under the Digital Millennium Copyright Act ("**DMCA**"), 17 U.S.C. §§ 1202(a), 1202(b) and 1203, based upon the Defendants' gross misuse of Ms. Highsmith's photographs – more than _**18,000 of them**_.

2.      In December 2015, Ms. Highsmith received a letter addressed to her nonprofit organization from the Defendants accusing her of copyright infringement and demanding payment for displaying ***one of her own photographs on her own website.***      See attached **Exhibit A.**

3.      Ms. Highsmith subsequently learned that the Defendants have been sending out similar threat letters to other users of her photography, and that Getty and Alamy are purporting to sell licenses for thousands of her photographs on their commercial websites.

4.      Through the United States Library of Congress ("**Library**"), Ms. Highsmith had previously given the public the right to reproduce and display all the photographs at issue in this lawsuit, for free.

5.      Beginning in about 1988 and continuing from time to time, to the present, Ms. Highsmith has been providing the Library with tens of thousands of her valuable photographs.

6.      These photographs represent her extensive documentation of people and places throughout the United States of America.

7.      The Defendants have apparently misappropriated Ms. Highsmith's generous gift to the American people.  The Defendants are not only unlawfully charging licensing fees to people and organizations who were already authorized to reproduce and display the donated photographs for free, but are falsely and fraudulently holding themselves out as the exclusive copyright owner (or agents thereof), and threatening individuals and companies with copyright infringement lawsuits that the Defendants could not actually lawfully pursue.

8.      As described further herein below, the conduct of the Defendants runs afoul of the DMCA's provisions proscribing the removal, modification and falsification of "copyright

management information," unlawful conduct that has injured Ms. Highsmith, thereby entitling Ms. Highsmith to the relief sought herein.

9.     Furthermore, despite the fact that Ms. Highsmith objected to the Defendants' conduct shortly after receiving the Defendants' threatening letter, such brazen and extortionate conduct still continues to this day, as the Defendants continue to threaten users of Ms. Highsmith's photography.  Defendants continue to license these images, in exchange for money that they know they are clearly not entitled to collect.

10.    Defendants' violations of 17 U.S.C. § 1202 entitle Ms. Highsmith to recover, among other things, and if she so elects as provided in 17 U.S.C. § 1203(c)(3)(B), "an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000."

11.    Getty has committed at least **18,755** separate violations of 17 U.S.C. § 1202, one count for each of the **18,755** Highsmith Photos appearing on Getty's website.  Thus, Ms. Highsmith is entitled to recover, among other things, and if she so elects, aggregate statutory damages against Getty of not less than forty-six million, eight hundred eighty-seven thousand five hundred dollars (**$46,887,500**) and not more than four hundred sixty-eight million, eight hundred seventy-five thousand dollars (**$468,875,000).**

12.    The unlawful conduct complained of herein is not Getty's first violation of the DMCA, codified at 17 U.S.C. § 1202.

13.    ***Getty was found by this Court to have violated 17 U.S.C. § 1202 within the last 3 years, and ordered to pay over $1 million in damages.***

14.     Because Getty has already had a final judgment entered against it by this Court under 17 U.S.C. § 1202 in the past three years, this Court may treble the statutory damages in this case against Getty.

15.     Getty must therefore account for well over ***one billion dollars ($1B)*** in statutory copyright damages in this case.

16.     Unfortunately, the Defendants' bad faith business practices have proven to be so lucrative, their behavior has apparently continued unabated.

17.     Absent Order of this Court and such exemplary damages to deter such egregious conduct, Ms. Highsmith and the public at large will continue to be defrauded, misled, and irreparably injured by the Defendants' unlawful acts.

<u>PARTIES</u>

18.     Plaintiff Carol M. Highsmith is an individual and American citizen residing at 7501 Carroll Avenue, Takoma Park, Maryland 20912-5715.

19.     Defendant Getty Images (US), Inc., is a corporation organized and existing under the laws of Delaware, having its principal place of business at 605 Fifth Avenue South, Suite 400, Seattle, Washington 98104, and also having offices at 75 Varick Street, New York, New York 10013, and owns and/or is operated under common control with Defendant License Compliance Services, Inc., and Defendant Picscout, Inc.

20.     Defendant Picscout, Inc. is a corporation organized and existing under the laws of Delaware.  Defendant Picscout has offices at Columbia Center, 701 Fifth Avenue, 42th Floor, Suite 4272, Seattle, WA 98104, and is owned by and/or operated under common control with Defendant Getty Images (US), Inc.

21.     Defendant License Compliance Services, Inc., is a corporation organized and existing under the laws of Washington, having its principal place of business at 701 Fifth Avenue, Suite 4200, Seattle, Washington 98104, and is owned by and operated under common control with Defendant Getty Images (US), Inc.

22.     Defendant Alamy, Inc., is a corporation organized and existing under the laws of New York, having its principal place of business at 20 Jay Street, Suite 848, Brooklyn, New York 11201, and owns, is owned by, and/or is operated under common control with Defendant Alamy, Ltd.

23.     Defendant Alamy, Ltd., is a limited company organized and existing under the laws of the United Kingdom, having its principal place of business at 6 – 8 West Central, 127 Olympic Avenue, Milton Park, Abingdon, Oxon, OX14 4SA, United Kingdom, and also having offices at 20 Jay Street, Suite 848, Brooklyn, New York 11201, and owns, is owned by, and/or is operated under common control with Defendant Alamy, Inc.

24.     Defendants John Does 1 to 100 are unnamed, as yet unidentified parties acting in active concert or participation with the named Defendants as part of this course of conduct.

25.     Ms. Highsmith reserves the right to amend this Complaint to include any and all other corporations, business entities, or persons affiliated in any way with Defendants which are or may be responsible for or involved with the wrongful conduct alleged herein.

## JURISDICTION AND VENUE

26.     Defendant Getty has actively contracted to supply goods and/or services in the State of New York, and within this Judicial District, and actively conducts business directly and through its representatives in the State of New York, and within this Judicial District, in connection with the matters giving rise to this action.   This Court, therefore, has personal jurisdiction over Getty, and its wholly-owned subsidiaries/alter-egos Picscout and LCS.

27.     Defendants Picscout and LCS have actively contracted to supply goods and/or services in the State of New York, and within this Judicial District, and actively conduct business directly and through their representatives in the State of New York, and within this Judicial District, in connection with the matters giving rise to this action.

28.     Defendant Alamy, Inc., has actively contracted to supply goods and/or services in the State of New York, and within this Judicial District, and actively conducts business directly and through its representatives in the State of New York, and within this Judicial District, in connection with the matters giving rise to this action.   This Court, therefore, has personal jurisdiction over Alamy, Inc.

29.     Defendant Alamy, Ltd., has actively contracted to supply goods and/or services in the State of New York, and within this Judicial District, and actively conducts business directly and through its representatives in the State of New York, and within this Judicial District, in connection with the matters giving rise to this action. This Court, therefore, has personal jurisdiction over Alamy, Ltd.

30.     Jurisdiction over the subject matter of this action arises under 28 U.S.C. § 1331, and under the copyright laws of the United States, Title 17 of the United States Code, including but not necessarily limited to 17 U.S.C. § 1203.

31.      Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400.

## FACTUAL ALLEGATIONS

## I.      PLAINTIFF CAROL HIGHSMITH.

### a.  Carol M. Highsmith is a Distinguished American Photographer.

32.      Ms. Highsmith has taken photographs in all 50 States, the District of Columbia, and Puerto Rico.

33.      As described in detail below, Ms. Highsmith's work has been featured in more than 50 books, as well as in movies and television programs, and on U.S. postage stamps.

34.      In 2011, Ms. Highsmith founded the nonprofit *This is America! Foundation*, with a mission of producing a nationwide visual study of the United States of America in the early 21st Century.  (*See* www.thisisamericafoundation.org)

### b.  Ms. Highsmith Has Graciously Made Her Work Available to the Public to Reproduce and Display for Free through the Library of Congress.

35.      Since approximately 1988, Ms. Highsmith has made her photographs available to the public for free through the U.S. Library of Congress, thereby exercising her exclusive rights under 17 U.S.C. § 106 to distribute copies of her copyrighted work to the public by sale or other transfer of ownership, and to authorize others to do so.

36.      At no time did Ms. Highsmith intend to abandon her rights in her photographs, including any rights of attribution or rights to control the terms of use for her photographs, nor was it ever her intent to enable third parties to purport to sell licenses for her photographs, or send threating letters to people who used her photos.

37.      At all times relevant to this lawsuit, Ms. Highsmith's intent has been that the public should be able to reproduce and display her work for free, with proper accreditation given to her and proper reference made to the Library collection.

38.     The agreement that Ms. Highsmith signed with the Library in November 1991 specifically addressed attribution issues.

39.     A true and correct copy of the "**Instrument of Gift**" that Ms. Highsmith signed on November 17, 1991, is attached hereto as **Exhibit B.**

40.     Ms. Highsmith's work is available on the Library website together with the copyright management information for each work, including information identifying Ms. Highsmith as the author of each work, providing the date of each work, providing the title of each work, and identifying Ms. Highsmith as the copyright owner who stipulated the terms and conditions of using the work, namely, that the public may reproduce and display the work for free.

41.     One example of copyright management information provided in connection with a Highsmith Photo on the Library website is attached hereto as **Exhibit C.**

42.     C. Ford Peatross, the Director of the Library's Center for Architecture, Design and Engineering in the Prints and Photographs Division, stated in a press release in December 2007 about Ms. Highsmith, that "[t]he donation of her photographs is one of the greatest acts of generosity in the history of the Library."

**c.   Ms. Highsmith and Her Work Are Held in the Highest Esteem.**

43.     Ms. Highsmith and her work have been widely recognized and praised, earning her and her work distinguished reputations of the highest caliber.

44.     For example, Ms. Highsmith's collection at the Library is featured in the top 6 collections out of 15 million images in the Prints & Photographs archive, alongside Civil War master photographer Mathew Brady, Depression and Dust Bowl photojournalist Dorothea

Lange, and the Historic American Buildings Survey.  Ms. Highsmith is the only living person so honored.

45.     Additionally, Ms. Highsmith and her work have been featured and praised in publications by some of the most highly regarded international media organizations, including newspaper, magazine, and television coverage by *The Washington Post*, *The New York Times*, *The Washington Post Magazine*, *Time*, *Life*, *Smithsonian*, and CBS News.

46.     Jeremy Adamson, Director of Collections and Services for the U.S. Library of Congress, has said the following of Ms. Highsmith and her work:

> Highsmith's color images are certainly of the highest technical and artistic quality. But more importantly, she has the uncanny ability to identify, focus on and capture for posterity the essential features of our social landscape and physical environment, both natural and man-made. A photograph by Carol Highsmith is a document of rare precision and beauty, revealing with exacting clarity the look and feel of people and places across our great nation.

47.     The United States Postal Service ("**USPS**") has twice chosen Ms. Highsmith's photographs for stamps, namely, these two iconic images:




**Fig. 1**                    **Fig. 2**

48.     Figure 1 is an iconic color photograph that Ms. Highsmith took of the Jefferson Memorial, which the USPS chose in 2002 to feature on a USPS Priority Mail stamp, approximately 100 million copies of which were produced.

49.     Figure 2 is an iconic black-and-white photograph that Ms. Highsmith took of the statute of Abraham Lincoln in the Lincoln Memorial, which the USPS chose in 2013 to feature on a USPS 20-cent stamp.

II.     **DEFENDANT GETTY'S CONDUCT.**

a.  **Defendant Getty Images is a $3.3 Billion Company Whose Primary Business is Buying and Selling Copyright Licenses for Photographs, Videos, Music, and Other Media.**

50.     Getty is a Seattle-based stock photo company last purchased by the world's largest private equity firm, The Carlyle Group, for $3.3 billion in 2012.

51.     Getty describes itself as follows on its website:

> Getty Images is among the world's leading creators and distributors of award-winning still imagery, video, music and multimedia products, as well as other forms of premium digital content, available through its trusted house of brands, including iStock© and Thinkstock©. / With its advanced search and image recognition technology, Getty Images serves business customers in more than 100 countries and is the first place creative and media professionals turn to discover, purchase and manage images and other digital content. Its best-in-class photographers and imagery help customers produce inspiring work which appears every day in the world's most influential newspapers, magazines, advertising campaigns, films, television programs, books and online media. / Mark Getty and Jonathan Klein founded Getty Images in 1995 with the goal of turning a disjointed and fragmented stock photography market into a thriving, modernized industry able to meet the changing needs of visual communicators. It was the first company to license imagery via the web, moving the entire industry online.[1]

52. Getty further describes itself as follows on its website:

> Getty Images has a vast and growing network of exclusive commercial and distribution partnerships with the world's most prestigious media, publishing and entertainment companies, as well as with the most prominent sports governing bodies across the globe. After 12 years of trading publicly on the NASDAQ and the NYSE, Jonathan [Klein] successfully took Getty Images private in July 2008, in partnership with Hellman & Friedman, in a $2.4 billion transaction. In October 2012, the

---

[1] http://press.gettyimages.com/about-us/

management team, led by Jonathan, together with the Getty family and The Carlyle Group, acquired Getty Images for $3.3 billion.[2]

53. In a press release issued on April 27, 2016,[3] Getty stated, in relevant part:

Because image consumption is immediate, once an image is displayed in high-resolution, large format, there is little impetus to view the image on the original source site….

Getty Images' General Counsel, Yoko Miyashita says: "Getty Images represents over 200,000 photojournalists, content creators and artists around the world who rely on us to protect their ability to be compensated for their work. Google's behavior is adversely affecting not only our contributors, but the lives and livelihoods of artists around the word – present and future.  By standing in the way of a fair marketplace for images, Google is threatening innovation, and jeopardizing artists' ability to fund the creation of important future works.  Artists need to earn a living in order to sustain creativity and licensing is paramount to this; however, this cannot happen if Google is siphoning traffic and creating an environment where it can claim the profits from individuals' creations as its own."

Miyashita continues: "Getty Images believes that images have the power to move the world by spurring action and driving change. It is key that these issues with Google are addressed and that the dominant search engine in Europe leads users to legitimate sources for imagery, rather than creating an environment that benefits Google alone. A fair marketplace will allow photographers to continue to capture the ground-breaking imagery that informs and impacts the world every day."

Getty Images firmly supports a more image-rich, digital world, but one that recognizes and remunerates the content creators who create this imagery. In 2014, Getty Images launched its embed tool, which revolutionized the visual content industry by making imagery available for easy, legal sharing at no cost for non-commercial use. This embed functionality provides consumers with an easy, legal alternative to the "right click," an alternative that ensures the content creator is appropriately credited for their work and that the image is clearly traceable to Getty Images in the event that a user wishes to license the image for a commercial purpose."

---

[2] http://press.gettyimages.com/executives/jonathan-klein/
[3] http://press.gettyimages.com/getty-images-files-competition-law-complaint-against-google/

**b. Getty is Listing Ms. Highsmith's Work on Its Commercial Website Without Her Permission, Misrepresenting the Author and Copyright Owner of Her Work, and Selling Licenses for Her Work Despite Having No Right to Do So.**

54.     Getty has placed photographs authored by Ms. Highsmith (each a "**Highsmith Photo**"; collectively, "**Highsmith Photos**") on Getty's website – more than _**18,000**_ of them.

55.     Getty has no contract or other agreement with Ms. Highsmith related to the Highsmith Photos and has not otherwise obtained any license, permission, or other grant of rights in the Highsmith Photos from Ms. Highsmith (other than the right to reproduce and/or display them for free, which she has granted to everyone).

56.     For each Highsmith Photo appearing on the Getty website, Getty makes the image available on multiple pages on its website with materially false information regarding:

(a) the name and other identifying information about the author of the Highsmith Photo;

(b) the name of and other identifying information about the copyright owner of the Highsmith Photo; and

(c) the terms and conditions for use of the Highsmith Photo.

57.     For example, without limitation, Getty on its website identifies the Highsmith Photos on some pages as being, "By: Buyenlarge," without any credit given to Ms. Highsmith, and on other pages with the identifier, "Credit: Buyenlarge/Contributor," together with a description of the work stating the title (or, in some instances, partial title), followed by, "(Photo by Carol M. Highsmith/Buyenlarge/Getty Images)."

58.     Nowhere on its website does Getty identify Ms. Highsmith as the sole author of the Highsmith Photos.

59.     Likewise, nowhere on its website does Getty identify Ms. Highsmith as the copyright owner of the work.

60.     Instead, Getty misrepresents the terms and conditions of using the Highsmith Photos by falsely claiming a user must buy a copyright license from Getty in order to have the right to use the Highsmith Photos.

61.     For example, without limitation, Getty offers for sale on its website copyright licenses for using Highsmith Photos, with "Standard editorial rights" packages starting at $175.00 USD for a small size up to $575.00 USD for a large size, and with "Custom rights" also offered.

62.     Nowhere on its website does Getty identify the Highsmith Photos as being available to the public to reproduce and display for free, through the Library website.

63.     One example of a Highsmith Photo listing on Getty's website is attached hereto as **<u>Exhibit D.</u>**

64.     Getty has unjustly profited by selling copyright licenses for use of Highsmith Photos despite Ms. Highsmith having made the Highsmith Photos available through the Library for the public to reproduce and display, for free.

65.     For example, a Google search of "Highsmith Buyenlarge" reveals numerous articles by numerous national and international media organizations containing copies of Highsmith Photos credited as, "By Carol M. Highsmith/Buyenlarge/Getty Images."

66.     Some of these media organizations are the same ones that have featured stories about Ms. Highsmith and her work.

### III.    DEFENDANT ALAMY'S CONDUCT.

####    a.   Alamy is a Competitor of Defendant Getty Whose Primary Business is Also Buying and Selling Copyright Licenses for Photographs, Videos, and other Media.

67.    Alamy is a UK-based company founded in 1999 that sells copyright licenses for, as its website says, "over 75 million high quality stock images, vectors and videos from Alamy, the world's largest stock photo collection."[4]

68.    Alamy invites contributors to upload photographs to its website, for which it them offers commercial copyright licenses in exchange for the payment of money.

69.    Alamy's website proclaims a "Fair and equitable approach to photographers," stating:

> In the beginning, building a substantial bank of diverse photography was the biggest hurdle to cross. Alamy bucked the trend by offering a groundbreaking approach to photographer commissions with returns ranging from 85–65%. Over the years commission splits across the industry have migrated further in favour of the agency, but Alamy has maintained a fair and equitable approach and commission is now 50/50 across the board.[5]

70.    Alamy's website also proclaims "Unprecedented Growth," stating:

> Alamy packaged digital photography in a way that grabbed the market's attention, and allied with the equitable approach to its photographers the company reached its first million images in just over 4 years and became profitable in 5 years. And now, fourteen years after it was founded, Alamy has the largest online collection of images and video clips. As a new player on the block, Alamy didn´t have a multimillion dollar legacy of non-digital images that it had to deal with. So from the outset the company was lean and agile and able to make the most of the advantages offered to it from new and emerging technology. Indeed, Alamy has used technology to great effect to drive the market forward.[6]

---

[4] http://www.alamy.com/
[5] http://www.alamy.com/about-alamy/our-story.asp
[6] Id.

    **b. Alamy is Listing Ms. Highsmith's Work on its Website Without Her Permission, Misrepresenting the Author and Copyright Owner of Her Work, and Selling Licenses for Her Work, Despite Having No Right to Do So.**

71.    Alamy has placed Highsmith Photos on Alamy's website – at least **_500_** of them.

72.    Alamy has no contract or other agreement with Ms. Highsmith related to the Highsmith Photos and has not otherwise obtained any license, permission, or other grant of rights in the Highsmith Photos from Ms. Highsmith.

73.    For each Highsmith Photo appearing on Alamy's website, Alamy makes the image available with false information regarding:

(a) the name and other identifying information about the author of the Highsmith Photo;

(b) the name of and other identifying information about the copyright owner of the Highsmith Photo; and

(c) the terms and conditions for use of the Highsmith Photo.

74.    For example, on many pages on its website, Alamy has made the Highsmith Photos available with no reference whatsoever to Ms. Highsmith as either the author or the copyright owner of the work, thus distributing false author and/or copyright owner information.

75.    For further example, on other pages on its website, Alamy places underneath the Highsmith Photos false copyright ownership claims, such as, without limitation, "© Everett Collection Inc / Alamy Stock Photo."

76.    Nowhere on its website does Alamy identify Ms. Highsmith as the copyright owner of the work or provide any information about her donation to the public.

77.    Alamy also offers for sale on its website copyright licenses for using the Highsmith Photos, for example, with a "Presentation" license starting at $14.99, an "Editorial

website" license starting at $24.99, and a "Magazines, newsletters and books" license starting at $69.99.

78.     Nowhere on its website does Alamy identify the Highsmith Photos as being available to the public to reproduce and display for free through the Library website.

79.     One example of a listing for Highsmith Photo on Alamy's website is attached hereto as **Exhibit E.**

80.     Alamy has unjustly profited by selling copyright licenses for use of Highsmith Photos despite Ms. Highsmith having made the Highsmith Photos available through the Library for the public to reproduce and display, for free.

## IV.     DEFENDANTS LCS' AND PICSCOUT'S CONDUCT.

### a.     Getty Owns and/or Operates Defendants LCS and Picscout, Who Were Authorized by Alamy to Send Threatening Letters to "Unlicensed" Users of Ms. Highsmith's Images.

81.     Defendants LCS and Picscout are in the copyright enforcement business.

82.     LCS and Picscout use computer programs and other means to "scrape" the internet to locate and identify allegedly infringing uses of images for which their clients sell copyright licenses.

83.     LCS and Picscout then send threatening letters to the allegedly infringing users, including demanding payment of settlements to avoid a lawsuit being filed.

84.     The letter that Ms. Highsmith received from the Defendants listed "License Compliance Services, Inc." as the sender in the address block, but demanded that payment be made to "License Compliance Services/Picscout Inc."

85.     Additionally, the letter that Ms. Highsmith received on December 14, 2015, was sent before License Compliance Services, Inc. was organized under the laws of the State of Washington, which occurred in March 2016.

86.     Both companies are wholly-owned subsidiaries/alter-egos of Getty.   Any reference in this Complaint to LCS should be interpreted to include Picscout, as appropriate.

87.     Getty and/or Alamy use Defendant LCS as their agent for certain copyright enforcement actions, including having LCS take actions such as those described in the preceding paragraphs on behalf of Getty and/or Alamy, including with respect to the Highsmith Photos.

88.     On behalf of its clients, including Alamy and Getty, LCS uses the aforesaid information that it gathers in order to contact, via letter and/or email, allegedly infringing users of images for which LCS's clients, including Alamy and Getty, sell copyright licenses.

89.     Getty has authorized LCS to identify allegedly infringing uses of the Highsmith Photos for which Getty is selling copyright licenses.

90.     LCS has contacted such allegedly infringing users, falsely claiming these users have infringed Getty's copyrights and demanding payment of a settlement to Getty to avoid being sued.

91.     Alamy has authorized LCS to identify allegedly infringing uses of the Highsmith Photos for which Alamy is selling copyright licenses.

92.     For example, attached as **Exhibit F** is a copy of a threatening letter sent by Defendants to a third party located in Pennsylvania, alleging infringement of a Highsmith Photo.

93.    LCS has contacted such allegedly infringing users, falsely claiming these users have infringed Alamy's copyrights and demanding payment of a settlement to Alamy to avoid being sued.

94.    The letters and/or emails sent by LCS to allegedly infringing users of Highsmith's Photos threaten the recipient, stating that he/she must pay LCS's client, even if the user did not know that such use was allegedly infringing, and even if the user ceases and desists or even has already ceased and desisted from the allegedly infringing use.

      **b.   Defendant LCS, On Behalf of Alamy, Sent a Threatening Letter to the *This is America! Foundation*, Ms. Highsmith's Own Non-Profit Organization, for Using a Highsmith Photo Without Buying a License from Defendant Alamy.**

95.    Most egregiously, on or about December 14, 2015, LCS sent a threatening communication (attached hereto as **Exhibit A)** purportedly on behalf of Alamy of the type described above to *This is America! Foundation* (the "**Letter**"), regarding its use of the image depicted in Figure 3, which Alamy had posted on its website and for which it was purporting to sell copyright licenses:



**Fig. 3**

96.     The Letter stated as follows: "We have seen that an image or image(s) represented by Alamy has been used for online use by your company.  According to Alamy's records your company doesn't have a **valid license for use of the image(s)**." (emphasis in original).

97.     The Letter went on to state as follows: "Although this infringement might have been unintentional, use of an image without a valid license is considered copyright infringement in violation of the Copyright Act, Title 17, United States Code. This copyright law entitles Alamy to seek compensation for any license infringement."

98.     The letter demanded a settlement payment of $120.00.

99.     The Letter's originating address block purports to be sent on behalf of "License Compliance Services, Inc. on behalf of Alamy" located at Columbia Center, 701 Fifth Avenue, 42th Floor, Suite 4272, Seattle, WA 98104, but demands that payment be sent to "License Compliance Services/Picscout Inc." at the same address.

100.    According to the Washington Secretary of State records, License Compliance Services, Inc. was not formed until three months after the Letter was sent.

101.    The Letter is signed by "License Compliance Services/LCS@LCS.global."

102.    The Whois information for LCS.global indicates that the domain is registered by License Compliance Services, Inc., but gives the registrant's address as 605 5th Avenue South, Suite 400, Seattle, WA, 98104 – which is Defendant Getty's corporate address.

103.    This same address is given in the Registrant, Administrator, and Technical contact information for LCS.global.

104.    In the "Frequently Asked Questions" section of the Letter, the answer to the question "What if I didn't know?" includes the following language: "You may have employed a

third party, former worker or intern to design and develop your company's site. However, the liability of any infringement ultimately falls on the company (the end user) who hired that party, employee or intern."   The answer to the question "What if I simply remove the image?" includes the following language: "While we appreciate the effort of removing the material in question from your site, we still need compensation.  Your company has benefited by using our imagery without our permission. As the unauthorized use has already occurred, payment for that benefit is necessary."

105.    Ms. Highsmith was shocked to receive such a threatening communication from Defendant LCS, because *This is America! Foundation* is the non-profit organization that she formed in 2011 to support her *This is America!* Project, the photograph at issue is one of Ms. Highsmith's own original works of authorship, and *This is America! Foundation* unquestionably had the right to use Ms. Highsmith's own photographs without obtaining a license from Defendant Alamy.

106.    On December 23, 2015, Ms. Highsmith called LCS at the telephone number given in the Letter to discuss her receipt of the Letter.

107.    During that telephone conversation, which lasted approximately 27 minutes, Ms. Highsmith identified herself as the author of the photograph in question.

108.    Ms. Highsmith also told the representative of LCS about the fact that she had donated her photographs to the Library of Congress and made them available to the public to reproduce and display for free, and asked for written verification that they would not pursue any further action against her.

109.   On December 29, 2015, Ms. Highsmith received an email from LCS acknowledging that "after further review" it had "closed [the] case" against her, thereby implicitly acknowledging the correctness and propriety of her position.  See **Exhibit G.**

110.   Ms. Highsmith's aforesaid discussions with LCS gave the Defendants actual and/or constructive knowledge, notice, and/or reason to know or believe that LCS's, Picscout's, Alamy's, and Getty's uses of the Highsmith Photos in this manner was improper and unlawful.

111.   Despite the Defendants' actual and/or constructive knowledge, notice, and/or reason to know or believe that their uses of the Highsmith Photos were improper and illegal, the Defendants nonetheless continued their improper and illegal actions with respect to the Highsmith Photos as alleged hereinabove.

112.   The fact that the Defendants have continued to purport to sell licenses to the Highsmith Photos means, at a minimum, that the Defendants' actions are intentional.

113.   Indeed, for example, even after LCS acknowledged in December 2015 that it "closed [the] case" regarding the above-discussed image, ***to this day Alamy and Getty continue to display the above photograph on their websites and continue to purport to sell copyright licenses for it, despite knowing that that they have no right to do so.***

   c. **LCS's Knowledge and Intent Can and Should Be Imputed to Getty and Alamy.**

114.   Getty owns, controls, or is under common ownership and/or control with Defendants LCS and Picscout.

115.   For example, three of the four "Governing Persons" of LCS listed on the Washington Secretary of State website are: Preston Graham, Director, Vice President; Kjehi Kellough, Director, Vice President; and Elizabeth A. Vaughan, Vice President, Secretary.

116.    These same executives of LCS also hold executive positions with Defendant Getty, namely: Preston Graham is Senior Director, Finance & Controller for Getty; Kjehi Kellough is Corporate Counsel for Getty; and Elizabeth A. "Lizanne" Vaughan is Vice President, Corporate Counsel for Getty.

117.    Furthermore, the Whois data for LCS.global lists Getty's corporate address as the Registrant, Administrative contact and Technical contact.

118.    Because of the common ownership and/or control of LCS, Picscout, and Getty as described hereinabove, and because of the agency relationship between the Defendants described hereinabove, any knowledge, willful blindness, and/or intent of LCS and/or Picscout can and should be imputed to Getty.

119.    Because of the apparent and/or actual agency relationship between Alamy, Picscout and LCS as described hereinabove, including specifically as to the Highsmith Photo as to which LCS sent Ms. Highsmith a settlement demand, any knowledge, willful blindness, and/or intent of LCS or Picscout can and should be imputed to Alamy.

## V.     THE DEFENDANTS' WRONGFUL CONDUCT HAS INJURED MS. HIGHSMITH AND THE PUBLIC, AND WILL CONTINUE TO DO SO UNLESS BROUGHT TO A HALT BY THIS COURT.

120.    The Defendants' actions as described hereinabove have injured Ms. Highsmith, including but not limited to injuring Ms. Highsmith's personal and professional reputation; harming the value of Ms. Highsmith's past and future work; infringing upon Ms. Highsmith's rights in her name and/or likeness; and infringing upon Ms. Highsmith's exercise of her exclusive rights under 17 U.S.C. § 106 with respect to the Highsmith Photos.

121.    The economic damage that Ms. Highsmith has suffered includes, without limitation, any and all revenue received by the Defendants based on purported licenses sold for

the Highsmith Photos.  These funds represent money that Ms. Highsmith could have received

had she attempted to monetize her photos through the Defendants.

122.    The injury to Ms. Highsmith's reputation has been even more severe.

123.    There is at least one example of a recipient of a threatening letter for use of a

Highsmith Photo researching the issue and determining that Ms. Highsmith had made her

photos freely available and free to use through the Library website.  See, e.g., **Exhibit F.**

124.    Therefore, anyone who sees the Highsmith Photos and knows or learns of her

gift to the Library could easily believe her to be a hypocrite.

### VI.    OTHER INDIVIDUALS, COMPANIES, AND ORGANIZATIONS, INCLUDING THOSE REGULARLY DEALING IN COPYRIGHTS, ROUTINELY ASK FOR MS. HIGHSMITH'S PERMISSION BEFORE USING HIGHSMITH PHOTOS COMMERCIALLY.

125.    Unlike the Defendants, other individuals, companies, and organizations routinely

contact Ms. Highsmith to request her permission to use Highsmith Photos in a commercial

manner, including businesses regularly dealing in copyrights.

126.    For example, in 2013, third party Knight Takes King Productions, LLC, sought

and obtained Ms. Highsmith's permission to use – for free – two of her photographs that they

had found in Ms. Highsmith's collection at the Library as background, non-featured wall

dressing for a set for the series *House of Cards*.  See **Exhibit H.**

127.    For further example, having previously sought and obtained Ms. Highsmith's

permission in 2014 to use – for free – two of her photographs that are part of her collection at

the Library in the major motion picture *Batman v. Superman*, third party Warner Bros. Pictures,

a division of WB Studio Enterprises Inc., on behalf of Dena Films, Ltd., in June 2016 sought

Ms. Highsmith's permission to use – for free – four of her photographs that they had found in

Ms. Highsmith's Library collection as background set dressing for a major motion picture currently under development.  See **Exhibit I.**

128.    As yet another example, in 2006, third party Universal Network Television sought and obtained Ms. Highsmith's permission to use – for free – Ms. Highsmith's photographs of the Fulton Steamboat, to be used in connection with the television program "*The Office*".  See **Exhibit J.**

## VII.   FINAL JUDGMENT HAS BEEN ENTERED AGAINST GETTY WITHIN THE LAST 3 YEARS FOR ANOTHER VIOLATION OF 17 U.S.C. § 1202(a).

129.    In 2014, a final judgment was entered against Defendant Getty for violating 17 U.S.C. § 1202(a) in the lawsuit styled *Agence France Presse v. Morel v. Getty Images (US), Inc., et al.*, Civil Action No. 10-cv-2730, U.S. Dist. Lexis 112436; 42 Media L. Rep. 2229; 111 U.S.P.Q.2D (BNA) 2017 (S.D.N.Y. Aug. 13, 2014) (referred to herein as *Morel v. Getty*).

### COUNT I:

### DEFENDANT GETTY'S INTENTIONAL VIOLATIONS OF THE DIGITAL MILLENNIUM COPYRIGHT ACT

### (17 U.S.C. § 1202)

130.    Ms. Highsmith adopts and incorporates by reference all allegations set forth in all paragraphs hereinabove as if fully restated in this paragraph.

131.    The Highsmith Photos are original works of authorship subject to the full protection of the United States copyright laws.

132.    Ms. Highsmith is the sole and exclusive owner of all rights, title, and interest in and to the copyrights in the Highsmith Photos, subject to licenses Ms. Highsmith has given to others, including without limitation the non-exclusive, free license Ms. Highsmith has given to the public to reproduce and display the Highsmith Photos.

133.    The Highsmith Photos contain copyright management information as defined in, at least, 17 U.S.C. § 1202(c)(1)-(3), (6), including: the title and other information identifying the work; the name of, and other identifying information about, the author of the work; the name of, and other identifying information about, the copyright owner of the work; and the terms and conditions for use of the work.

134.    By way of example and not limitation, on the main photo page for each of the Highsmith Photos on the Library website, the Library website provides information that includes but is not necessarily limited to the following: (a) Ms. Highsmith's title for the work; (b) an identification of "Carol M. Highsmith" as the author or creator of the work; (c) a proper credit line to use with the work referencing the Library of Congress collection in which the work appears; (d) in some instances, a citation to the work in MLA, Chicago, and/or AP formats; (e) a link to the Highsmith collection main page, which provides information indicating Ms. Highsmith's intention that the public be given free access to her collection; (f) in many if not all instances, a rights advisory indicating "No known restrictions on publication," signifying Ms. Highsmith's intention that her images may be used by the public for free without purchasing a license; and (g) in many if not all instances, one or more statements that, "Rights assessment is your responsibility," and/or a statement that, "The Library of Congress generally does not own rights to material in its collections and, therefore, cannot grant or deny permission to publish or otherwise distribute the material."

135.    In violation of 17 U.S.C. § 1202(a), Defendant Getty, knowingly and with the intent to induce, enable, facilitate, or conceal infringement, has provided copyright management information for the Highsmith Photos that is false.

136.     In violation of 17 U.S.C. § 1202(a), Defendant Getty, knowingly and with the intent to induce, enable, facilitate, or conceal infringement, has distributed copyright management information for the Highsmith Photos that is false.

137.     In violation of 17 U.S.C. § 1202(b), Defendant Getty, without the authority of the copyright owner or the law, intentionally removed or altered copyright management information for the Highsmith Photos, knowing or having reasonable grounds to know that doing so would induce, enable, facilitate, or conceal an infringement of a right under Title 17 of the United States Code.

138.     In violation of 17 U.S.C. § 1202(b), Defendant Getty, without the authority of the copyright owner or the law, has distributed copyright management information for the Highsmith Photos knowing that said copyright management information has been removed or altered without authority of the copyright owner or the law, knowing or having reasonable grounds to know that doing so would induce, enable, facilitate, or conceal an infringement of any right under Title 17 of the United States Code.

139.     In violation of 17 U.S.C. § 1202(b), Defendant Getty, without the authority of the copyright owner or the law, has distributed copies of the Highsmith Photos knowing that the copyright management information for said Highsmith Photos has been removed or altered without authority of the copyright owner or the law, knowing or having reasonable grounds to know that doing so would induce, enable, facilitate, or conceal an infringement of any right under Title 17 of the United States Code.

140.     Getty has violated 17 U.S.C. § 1202 with respect to thousands of Highsmith Photos, at a minimum.

141.    For example, without limitation, a search of "Carol Highsmith" on Getty's website returns 18,752 results, and upon information and belief each of those results is a Highsmith Photo as to which Getty has violated 17 U.S.C. § 1202.

142.    For example, as shown in the photo taken from Defendant Getty's website in Figure 4, Getty provides a false watermark over the image falsely claiming that Getty has some kind of ownership interest in the photograph:



**Fig. 4**

143.    Getty also provides the following examples of false copyright management information:   "Credit:   Buyenlarge/Contributor"   and   "Photo   by   Carol   M. Highsmith/Buyenlarge/Getty Images".

144.    Neither Buyenlarge nor Getty had any involvement whatsoever with the making of the Highsmith Photos.

145.     Getty has also misrepresented the terms of use of the Highsmith Photos, which is another example of providing false copyright management information.

146.     Ms. Highsmith has given the Highsmith Photos to the public to reproduce and display, for free.

147.     The infringement that has been induced, enabled, facilitated, or concealed under the statute is, at a minimum, an infringement of Ms. Highsmith's exclusive right under the preamble to 17 U.S.C. 106 to authorize (or set the terms for) the reproduction and distribution of copies of her works, as well as her exclusive right under 17 U.S.C. 106(3) to "distribute copies … of the copyrighted work to the public by sale or other transfer of ownership."

148.     The conduct of Getty is intentional, at a minimum, because despite Ms. Highsmith's telephone call to Getty (or Getty's agent), Getty continues to purport to sell licenses to the Highsmith Photo she was accused of infringing, along with all of her other photos found on Getty's website.

149.     At no time following Ms. Highsmith's telephone call did Getty or its agent reach out to Ms. Highsmith to attempt to correct the situation.

150.     Ms. Highsmith is a "person injured" by Getty's violations of Section 1202, thereby qualifying her as a person who may bring a civil action for such violations under Section 1203.

151.     Getty's violations of 17 U.S.C. § 1202 entitle Ms. Highsmith to recover, among other things, and if she so elects as provided in 17 U.S.C. § 1203(c)(3)(B), "an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000."

152.    When Getty is found to have committed one violation of 17 U.S.C. § 1202 for each of the 18,755 results of a search for "Carol M. Highsmith" on Getty's website, Ms. Highsmith would be entitled to recover, among other things, and if she so elects, aggregate statutory damages against Getty of not less than forty-six million, eight hundred eighty-seven thousand five hundred dollars (**$46,887,500**) and not more than four hundred sixty-eight million, eight hundred seventy-five thousand dollars (**$468,875,000).**

153.    Additionally, because Getty has already had a final judgment entered against it in the past three years in the *Morel v. Getty* case, the Court may treble the statutory damages in this case.

## COUNT II:

### DEFENDANT ALAMY'S VIOLATIONS OF THE DIGITAL MILLENNIUM COPYRIGHT ACT

### (17 U.S.C. § 1202)

154.    Ms. Highsmith adopts and incorporates by reference all allegations set forth in all paragraphs hereinabove as if fully restated in this paragraph.

155.    In violation of 17 U.S.C. § 1202(a), Defendant Alamy, knowingly and with the intent to induce, enable, facilitate, or conceal infringement, has provided copyright management information for the Highsmith Photos that is false.

156.    In violation of 17 U.S.C. § 1202(a), Defendant Alamy, knowingly and with the intent to induce, enable, facilitate, or conceal infringement, has distributed copyright management information for the Highsmith Photos that is false.

157.    In violation of 17 U.S.C. § 1202(b), Defendant Alamy, without the authority of the copyright owner or the law, intentionally removed or altered copyright management information for the Highsmith Photos, knowing or having reasonable grounds to know that

doing so would induce, enable, facilitate, or conceal an infringement of any right under Title 17 of the United States Code.

158.    In violation of 17 U.S.C. § 1202(b), Defendant Alamy, without the authority of the copyright owner or the law, has distributed copyright management information for the Highsmith Photos knowing that said copyright management information has been removed or altered without authority of the copyright owner or the law, knowing or having reasonable grounds to know that doing so would induce, enable, facilitate, or conceal an infringement of any right under Title 17 of the United States Code.

159.    In violation of 17 U.S.C. § 1202(b), Defendant Alamy, without the authority of the copyright owner or the law, has distributed copies of the Highsmith Photos, knowing that the copyright management information for said Highsmith Photos has been removed or altered without authority of the copyright owner or the law, knowing or having reasonable grounds to know that doing so would induce, enable, facilitate, or conceal an infringement of any right under Title 17 of the United States Code.

160.    Defendant Alamy has violated 17 U.S.C. § 1202 with respect to at least 500 Highsmith Photos.

161.    For example, many Highsmith Photos at Alamy are credited to "The Protected Art Archive" or "Everett Collection Inc.," and upon information and belief many of those photos are Highsmith Photos as to which Alamy has violated 17 U.S.C. § 1202.

162.    Many of the Highsmith Photos found on the Defendant Alamy's website do not mention Ms. Highsmith at all.

163.    Moreover, all of the Highsmith Photos found on the Defendant Alamy's website bear watermarks, as shown in Figure 5, that falsely suggest Defendant Alamy as the owner of the image.



**Fig. 5**

164.    Defendant Alamy has also misrepresented the terms of use of the Highsmith Photos, which is another example of providing false copyright management information.  Ms. Highsmith has given the Highsmith Photos to the public to use for free.

165.    The infringement that has been induced, enabled, facilitated, or concealed under the statute is, at a minimum, an infringement of Ms. Highsmith's exclusive right under the preamble to 17 U.S.C. 106 to authorize (or set the terms for) the reproduction and distribution of copies of her works, as well as her exclusive right under 17 U.S.C. 106(3) to "distribute copies … of the copyrighted work to the public by sale or other transfer of ownership."

166.    The conduct of Defendant Alamy is intentional, at a minimum, because despite Ms. Highsmith's telephone call to Defendant Alamy's agent, Defenant Alamy continues to purport to sell licenses to the Highsmith Photo she was accused of infringing, along with all of her other photos found on Defendant Alamy's website.

167.    At no time following Ms. Highsmith's telephone call did Defendant Alamy or its agent reach out to Ms. Highsmith to attempt to correct the situation.

168.    Ms. Highsmith is a "person injured" by Defendant Alamy's violations of Section 1202, thereby qualifying her as a person who may bring a civil action for such violations under Section 1203.

169.    Defendant Alamy's violations of 17 U.S.C. § 1202 entitle Ms. Highsmith to recover, among other things, and if she so elects as provided in 17 U.S.C. § 1203(c)(3)(B), "an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000."

170.    Defendant Alamy has committed at least one violation of Section 1202 per Highsmith Photo that is available on its website.

171.    Thus, for example, without limitation, when Defendant Alamy is found to have committed one violation of 17 U.S.C. § 1202 for each of the approximately 500 Highsmith Photos (at a minimum) on Alamy's website, Ms. Highsmith would be entitled to recover, among other things, and if she so elects, aggregate statutory damages against Alamy of not less than one million two hundred fifty thousand dollars **($1,250,000)** and not more than twelve million five hundred thousand dollars **($12,500,000).**

## COUNT III:

### DEFENDANT LCS/PICSCOUT's VIOLATIONS OF
### THE DIGITAL MILLENNIUM COPYRIGHT ACT

### (17 U.S.C. § 1202)

172.    Ms. Highsmith adopts and incorporates by reference all allegations set forth in all paragraphs hereinabove as if fully restated in this paragraph.

173.    In violation of 17 U.S.C. § 1202(a), Defendants LCS and Picscout, knowingly and with the intent to induce, enable, facilitate, or conceal infringement, have provided copyright management information for the Highsmith Photos that is false.

174.    In violation of 17 U.S.C. § 1202(a), Defendants LCS and Picscout, knowingly and with the intent to induce, enable, facilitate, or conceal infringement, have distributed copyright management information for the Highsmith Photos that is false.

175.    In violation of 17 U.S.C. § 1202(b), Defendants LCS and Picscout, without the authority of the copyright owner or the law, intentionally removed or altered copyright management information for the Highsmith Photos, knowing or having reasonable grounds to know that doing so would induce, enable, facilitate, or conceal an infringement of any right under Title 17 of the United States Code.

176.    In violation of 17 U.S.C. § 1202(b), Defendants LCS and Picscout, without the authority of the copyright owner or the law, have distributed or imported for distribution copyright management information for the Highsmith Photos knowing that said copyright management information has been removed or altered without authority of the copyright owner or the law, knowing or having reasonable grounds to know that doing so would induce, enable, facilitate, or conceal an infringement of any right under Title 17 of the United States Code.

177.    In violation of 17 U.S.C. § 1202(b), Defendants LCS and Picscout, without the authority of the copyright owner or the law, has distributed copies of the Highsmith Photos knowing that the copyright management information for said Highsmith Photos has been removed or altered without authority of the copyright owner or the law, knowing or having reasonable grounds to know that doing so would induce, enable, facilitate, or conceal an infringement of any right under Title 17 of the United States Code.

178.    Defendants LCS/Picscout's falsification, modification, or removal of copyright management information occurs when Defendant LCS/Picscout sends letters representing that it is authorized by the copyright owner to threaten copyright infringement, and fails to credit Ms. Highsmith as the author or copyright owner.

179.    The infringement that has been induced, enabled, facilitated, or concealed under the statute is, at a minimum, an infringement of Ms. Highsmith's exclusive right under the preamble to 17 U.S.C. 106 to authorize that copies of her work be made and distributed, as well as her exclusive right under 17 U.S.C. 106(3) to "distribute copies … of the copyrighted work to the public by sale or other transfer of ownership."

180.    Ms. Highsmith is a "person injured" by Defendant LCS/Picscout's violations of Section 1202, thereby qualifying her as a person who may bring a civil action for such violations under Section 1203.

181.    It is unknown at this time how many threatening letters Defendants LCS and Picscout have sent to individuals falsely alleging copyright infringement for Highsmith Photos.

182.    Defendants LCS and Picscout have committed at least one violation of Section 1202 in each such letter that has been sent.

## PRAYER FOR RELIEF

For the reasons set forth above, the Plaintiff Carol M. Highsmith respectfully requests that the Court enter judgment for Ms. Highsmith and against Defendants as follows:

a. Awarding Ms. Highsmith preliminary and permanent injunctive relief under 17 U.S.C. § 1203(b)(1) requiring Defendant Getty Images (US), Inc., to cease and desist from all actions alleged herein to violate 17 U.S.C. §§ 1202(a) and/or 1202(b);

b. Awarding Ms. Highsmith preliminary and permanent injunctive relief under 17 U.S.C. § 1203(b)(1) requiring Defendants License Compliance Services, Inc., and Picscout, Inc. to cease and desist from all actions alleged herein to violate 17 U.S.C. §§ 1202(a) and/or 1202(b);

c. Awarding Ms. Highsmith preliminary and permanent injunctive relief under 17 U.S.C. § 1203(b)(1) requiring Defendant Alamy, Ltd., to cease and desist from all actions alleged herein to violate 17 U.S.C. §§ 1202(a) and/or 1202(b);

d. Awarding Ms. Highsmith damages under 17 U.S.C. §§ 1203(b)(3), (c)(1), (c)(2), and/or (c)(3)(B), including actual damages or, alternatively, statutory damages, if statutory damages are elected by Ms. Highsmith before judgment as provided in 17 U.S.C. § 1203(c)(3)(B), against Defendant Getty Images (US), Inc., for each of its violations of 17 U.S.C. §§ 1202(a) and/or (b);

e. Pursuant to 17 U.S.C. § 1203(c)(4), increasing up to triple, as the Court considers just, the award of actual damages or, alternatively, statutory damages to Ms. Highsmith against Getty Images (US), Inc., because within

the last 3 years a final judgment was entered against Getty Images (US), Inc. in the *Morel v. Getty* case for another violation of 17 U.S.C. § 1202;

f.   Awarding Ms. Highsmith damages under 17 U.S.C. §§ 1203(b)(3), (c)(1), (c)(2), and/or (c)(3)(B), including actual damages or, alternatively, statutory damages, if statutory damages are elected by Ms. Highsmith before judgment is entered as provided in 17 U.S.C. § 1203(c)(3)(B), against Defendants License Compliance Services, Inc. and Picscout, Inc., for each of its violations of 17 U.S.C. §§ 1202(a) and (b);

g.   Awarding Ms. Highsmith damages under 17 U.S.C. §§ 1203(b)(3), (c)(1), (c)(2), and/or (c)(3)(B), including actual damages or, alternatively, statutory damages, if statutory damages are elected by Ms. Highsmith before judgment is entered, as provided in 17 U.S.C. § 1203(c)(3)(B), against Defendant Alamy, Ltd., for each of its violations of 17 U.S.C. §§ 1202(a) and (b);

h.   Awarding Ms. Highsmith costs under 17 U.S.C. § 1203(b)(4) against Defendant Getty Images (US), Inc.;

i.   Awarding Ms. Highsmith costs under 17 U.S.C. § 1203(b)(4) against Defendants License Compliance Services, Inc. and Picscout, Inc.;

j.   Awarding Ms. Highsmith costs under 17 U.S.C. § 1203(b)(4) against Defendant Alamy, Ltd.;

k.   Awarding Ms. Highsmith reasonable and necessary attorney's fees under 17 U.S.C. § 1203(b)(5) against Defendant Getty Images (US), Inc.;

l.   Awarding Ms. Highsmith reasonable and necessary attorney's fees under 17 U.S.C. § 1203(b)(5) against Defendants License Compliance Services, Inc. and Picscout, Inc.;

m.  Awarding Ms. Highsmith reasonable and necessary attorney's fees under 17 U.S.C. § 1203(b)(5) against Defendant Alamy, Ltd.;

n.   Ordering under 17 U.S.C. § 1203(b)(6) the remedial modification or the destruction of any device or product involved in Getty Images (US), Inc.'s violations of 17 U.S.C. §§ 1202(a) and/or 1202(b) that is in the custody or control of Getty Images (US), Inc.;

o.   Ordering under 17 U.S.C. § 1203(b)(6) the remedial modification or the destruction of any device or product involved in License Compliance Services, Inc.'s or Picscout, Inc.'s violations of 17 U.S.C. §§ 1202(a) and/or 1202(b) that is in the custody or control of License Compliance Services, Inc.;

p.   Ordering under 17 U.S.C. § 1203(b)(6) the remedial modification or the destruction of any device or product involved in Alamy, Ltd.'s violations of 17 U.S.C. §§ 1202(a) and/or 1202(b) that is in the custody or control of Alamy, Ltd.;

q.   Awarding Ms. Highsmith all available pre-judgment and post-judgment interest on all amounts of any judgment; and

r.    Awarding Ms. Highsmith all other relief to which she may be justly entitled.

## A TRIAL BY JURY IS HEREBY DEMANDED.

July 25, 2016                                   Respectfully Submitted,

Joseph C. Gioconda, Esq. (JG 4716)
Joseph M. Forgione, Esq. (JF 8630)
GIOCONDA LAW GROUP PLLC
100 Park Avenue
16th Floor
New York, NY 10017
Telephone: (212) 235-1220
Facsimile: (888) 697-9665
*joseph.gioconda@giocondalaw.com*
*joseph.forgione@giocondalaw.com*

James R. Gourley, Esq.
Michael R. Steinmark, Esq.
CARSTENS & CAHOON, LLP
13760 Noel Road, Suite 900
Dallas, Texas 75240
Telephone: (972) 367-2001
Facsimile: (972) 367-2002
*gourley@cclaw.com*
*steinmark@cclaw.com*
(Admission *Pro Hac Vice* Pending)

*Attorneys for Plaintiff*
*Carol M. Highsmith, an Individual*