**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CAROL M. HIGHSMITH, and
THIS IS AMERICA!, INC.,

       *Plaintiffs*,

   v.

GETTY IMAGES (US), INC., LICENSE
COMPLIANCE SERVICES, INC., PICSCOUT,
INC., ALAMY, INC., ALAMY, LTD., and
JOHN DOES 1 TO 100,

      *Defendants.*

16 Civ. 5924 (JSR)

## ALAMY INC.'S AND ALAMY LTD.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Nancy E. Wolff
Lindsay W. Bowen
Brittany L. Kaplan
COWAN, DEBAETS, ABRAHAMS &
SHEPPARD LLP
41 Madison Avenue, 38th Floor
New York, NY 10010
Telephone:  (212) 974-7474

*Attorneys for Defendants Alamy Ltd., Alamy
Inc., and License Compliance Services, Inc.*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ......................................................................................................1

STATEMENT OF FACTS .............................................................................................................2

ARGUMENT ..................................................................................................................................6

I.   Motion to Dismiss Standard. ..................................................................................................6

II.  Highsmith Has Not Plausibly Alleged a Section 1202 Claim..................................................7

   A.  Highsmith Dedicated Her Photos to the Public Domain...................................................7

   B.  Section 1202 Does Not Apply to Public Domain Works................................................10

   C.  Highsmith Has Not Alleged That Alamy Intentionally Removed or Altered CMI. ........................................................................................................................11

III. Plaintiffs' Lanham Act Claim Is Foreclosed by the Supreme Court decision in *Dastar*.....12

IV.  Plaintiffs Have Failed to Plausibly Allege a New York Business Law Claim.....................14

V.   Plaintiffs Have Failed to Plausibly Allege a New York Common Law Claim.....................16

VI.  Plaintiffs' State Law Claims Are Blocked by the Communications Decency Act. .............19

VII. Plaintiffs' First Amended Complaint Should Be Dismissed Because This Court Lacks Personal Jurisdiction Over Alamy.........................................................................................21

VIII. Plaintiffs' Arguments are Contrary to Public Policy. .........................................................23

CONCLUSION.............................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Agence France Presse v. Morel*,
    769 F. Supp. 2d 295 (S.D.N.Y. 2011)......................................................................13

*American Code Co., Inc. v. Bensinger*
    282 F. 829 (2d Cir. 1922) ..............................................................................................8

*Antidote Int'l Films, Inc. v. Bloomsbury Publ'ng PLC*,
    467 F. Supp. 2d 394 (S.D.N.Y. 2006)......................................................................14

*AppSoft Dev., Inc. v. Diers, Inc.*,
    No. 3:13-CV-1520-J-32JBT, 2014 WL 3893316 (M.D. Fla. Aug. 8, 2014) .....................7, 10

*Aqua Creations USA Inc. v. Hilton Worldwide, Inc.*,
    487 F. App'x 627 (2d Cir. 2012) ..................................................................................7

*Ascentive, LLC v. Opinion Corp.*,
    842 F. Supp. 2d 450 (E.D.N.Y. Dec. 13, 2011)......................................................21

*Atl. Recording Corp. v. Project Playlist, Inc.*,
    603 F. Supp. 2d 690 (S.D.N.Y. 2009)......................................................................20

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)..............................................................................................7

*Baker v. Taylor*,
    2 F. Cas. 478 (C.C. S.D.N.Y.1848) ..............................................................................8

*BanxCorp v. Costco Wholesale Corp.*,
    723 F. Supp. 2d 596 (S.D.N.Y. 2010)......................................................................17

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................................7, 17

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007)....................................................................................22, 23

*Bongo Apparel, Inc. v. Iconix Brand Group, Inc.*,
    856 N.Y.S.2d 22 (Sup. Ct. 2008)............................................................................17

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)......................................................................................................22

*CA, Inc. v. Simple.com, Inc.*,
    621 F. Supp. 2d 45 (E.D.N.Y. 2009) ...................................................................18

*Cali v. E. Coast Aviation Servs., Ltd.*,
    178 F. Supp. 2d 276 (E.D.N.Y. 2001) ...................................................................8

*Care, Ltd. v. Mayborn USA, Inc.*,
    898 F. Supp. 2d 634 (S.D.N.Y. 2012)..................................................................17

*Carson Optical, Inc. v. Prym Consumer USA, Inc.*,
    No. CV 11-3677(ARL), 2013 WL 1209041 (E.D.N.Y. Mar. 25, 2013) ................19

*Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*,
    No. 08 CIV.5463 CM GWG, 2009 WL 1059647 (S.D.N.Y. Apr. 17, 2009)..................21, 22

*Chevrestt v. American Media, Inc.*,
    No. 16 Civ. 5557 (LCS), 2016 WL 4557318 (S.D.N.Y. Aug. 31, 2016) ...............12

*Chosun Int'l, Inc. v. Chrisha Creations, Ltd.*,
    413 F.3d 324 (2d Cir. 2005).................................................................................13

*Classic Liquor Imports., Ltd. v. Spirits Int'l B.V.*,
    No. 15 CIV 6503 (JSR), 2016 WL 4419457 (S.D.N.Y. Aug. 19, 2016) ...............15

*Compco Corp. v. Day-Brite Lighting, Inc.*,
    376 U.S. 234 (1964)............................................................................................17

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003).................................................................................... *passim*

*Decorative Aides Corp. v. Staple Sewing Aides Corp.*,
    497 F. Supp. 154 (S.D.N.Y. 1980).......................................................................25

*Eldred v. Ashcroft*,
    537 U.S. 186 (2003)............................................................................................24

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991)............................................................................................11

*Filmvideo Releasing Corp. v. Hastings*,
    426 F. Supp. 690 (S.D.N.Y. 1976).........................................................................8

*Fin. Info., Inc. v. Moody's Inv'rs Serv., Inc.*,
    No. 81 CIV 6001(RLC), 1986 WL 7791 (S.D.N.Y. July 10, 1986)......................19

*Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*,
    713 F. Supp. 2d. 215 (S.D.N.Y. 2010)................................................................14

iii

*Gianni Cereda Fabrics, Inc. v. Bazaar Fabrics, Inc.*,
    335 F. Supp. 278 (S.D.N.Y. 1971)................................................................8

*Golan v. Holder*,
    565 U.S. ——, 132 S. Ct. 873 (2012)........................................................24

*Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*,
    345 F.3d 922 (6th Cir. 2003) ..................................................................10

*Greeff Fabrics, Inc. v. Malden Mills Indus., Inc.*,
    412 F. Supp. 160 (S.D.N.Y. 1976)............................................................8

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
    277 F. Supp. 2d 269 (S.D.N.Y. 2003)......................................................16

*Gucci Am., Inc. v. Hall & Assocs.*,
    135 F. Supp. 2d 409 (S.D.N.Y. 2001)......................................................16

*H.W. Wilson Co. v. Nat'l Library Serv. Co.*,
    402 F. Supp. 456 (S.D.N.Y. 1975)..........................................................19

*Heckman v. Town of Hempstead*,
    568 F. App'x 41 (2d Cir. 2014) ................................................................7

*Heptagon Creations, Ltd. v. Core Group Marketing LLC*,
    No. 11 Civ. 1794(LTS)(AJP), 2011 WL 6600267 (S.D.N.Y. Dec. 22, 2011)........................18

*Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*,
    64 F. Supp. 3d 494 ..................................................................................7

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)..........................................................................22, 23

*Kacocha v. Nestle Purina Petcare Co.*,
    No. 15-CV-5489 (KMK), 2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016)..............................15

*Keogh v. Big Lots Corp.*,
    No. 3:04-00738, 2006 WL 1129375 (M.D. Tenn. Apr. 27, 2006) ............................10, 11, 12

*LBF Travel, Inc. v. Fareportal, Inc.*,
    No. 13 Civ. 9143, 2014 WL 5671853 (S.D.N.Y. Nov. 5, 2014) ...........................................16

*LoPresti v. Mass. Mt. Life Ins. Co.*,
    820 N.Y.S.2d 275 (2d Dep't 2006)............................................................18

*Mangiafico v. Blumenthal*,
    471 F.3d 391 (2d Cir. 2006)......................................................................7

*Mantello v. Hall*,
    947 F. Supp. 92 (S.D.N.Y. 1996)..........................................................................23

*MDB LLC v. Hussain*,
    No. 14-CV-9281 (VEC), 2016 WL 1267793 (S.D.N.Y. Mar. 29, 2016) ................................15

*Merideth v. Chicago Tribune Co., LLC*,
    No. 12 C 7961, 2014 WL 87518 (N.D. Ill. Jan. 9, 2014) ..........................................7

*Murawski v. Pataki*,
    514 F. Supp. 2d 577 (S.D.N.Y. 2007)..................................................................20

*New York Trust Co. v. Eisner*,
    256 U.S. 345 (1921)........................................................................................8

*Pyramyd Stone Int'l Corp. v. Crosman Corp.*,
    No. 95 Civ. 6665, 1997 WL 66778 (S.D.N.Y. Feb. 18, 1997) ..........................................22, 23

*Reed Const. Data Inc. v. McGraw-Hill Cos., Inc.*,
    638 F. App'x 43 (2d Cir. 2016) .......................................................................7

*Reed Constr. Data Inc. v. McGraw-Hill Cos., Inc.*,
    745 F. Supp. 2d 343 (S.D.N.Y. 2010)..................................................................16

*Reich v. Lopez*,
    38 F. Supp. 3d 436 (S.D.N.Y. 2014)...................................................................22

*Ricci v. Teamsters Union Local 456*,
    781 F.3d 25 (2d Cir. 2015).............................................................................20

*Roy Export Co. v. Columbia Broad. Sys.*,
    503 F. Supp. 1137 (S.D.N.Y. 1980)....................................................................18

*Schiffer Pub., Ltd. v. Chronicle Books, LLC*,
    No. Civ.A. 03–4962, 2004 WL 2583817 (E.D. Pa. Nov. 12, 2004)...................................10, 11

*Securitron Magnalock Corp. v. Schnabolk*,
    65 F.3d 256 (2d Cir. 1995)............................................................................16

*Seldon v. Magedson*,
    No. 11 CIV. 6218 PAC MHD, 2012 WL 4475274 (S.D.N.Y. July 10, 2012) .................20, 21

*Shiamili v. Real Estate Grp. of New York, Inc.*,
    17 N.Y.3d 281 (2011) ....................................................................................20

*Silverstein v. Penguin Putnam, Inc.*,
    522 F. Supp. 2d 579 (S.D.N.Y. 2007)..................................................................11

*Small v. Lorillard Tobacco Co.,*
　94 N.Y.2d 43 (1999) ........................................................................................16

*Sofa Doctor, Inc. v. New York Couch Doctor, Inc.,*
　No. 14-CV-05496 (PKC), 2016 WL 951523 (E.D.N.Y. Mar. 9, 2016) ...............15

*Sprint Sols., Inc. v. iCell Guru, Inc.,*
　No. 14 CV 3539, 2016 WL 3198248 (E.D.N.Y. June 7, 2016)............................15

*Stern v. Sinatra,*
　99 F. App'x 777 (9th Cir. 2004) .......................................................................11

*Thron v. HarperCollins Publishers, Inc.,*
　No. 01 CIV.5437(JSR), 2002 WL 1733640 (S.D.N.Y. July 26, 2002) .................12

*United States v. Elcom Ltd.,*
　203 F. Supp. 2d 1111 (N.D. Cal. 2002) .............................................................11

*Universal City Studios, Inc. v. Corley,*
　273 F.3d 429 (2d Cir. 2001)..............................................................................25

*Virgin Enters. Ltd. v. Virgin Eyes LLC,*
　No. 08 Civ. 8564, 2009 WL 3241529 (S.D.N.Y. Sept. 30, 2009) ......................23

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,*
　751 F.2d 117 (2d Cir. 1984)..............................................................................23

*Ward v. Nat'l Geographic Soc.,*
　208 F. Supp. 2d 429 (S.D.N.Y. 2002).................................................................10

**STATUTES & RULES**

17 U.S.C. § 104A ...................................................................................................24

17 U.S.C. § 106 .....................................................................................................10

17 U.S.C. § 109 .....................................................................................................24

17 U.S.C. § 1202 ............................................................................................*passim*

17 U.S.C. § 1203 ...................................................................................................11

47 U.S.C. § 230.........................................................................................2, 20, 21

Fed. R. Civ. P. 12(b)(2)...........................................................................................2

Fed. R. Civ. P. 12(b)(6)........................................................................................2, 6

Fed. R. Evid. 201 ...................................................................................................7

vi

New York General Business Law § 349 .......................................................................14, 15, 16

**OTHER AUTHORITIES**

Carol M. Highsmith, Rights and Restrictions Information, Prints and Photographs
 Division, Library of Congress, *available at*
 https://www.loc.gov/rr/print/res/482_high.html (last accessed August 16,
 2016) ........................................................................................................................................9

Copyright and Other Restrictions That Apply to Publication/Distribution of
 Images: Assessing the Risk of Using a P&P Image, Prints and Photographs
 Reading Room, Library of Congress, *available at*
 http://www.loc.gov/rr/print/195_copr.html (last accessed August 24, 2016)...........................9

S. Rep. No. 105-190 (1998) ...........................................................................................................10

Defendants Alamy Ltd. ("Alamy") and Alamy Inc. ("Alamy Inc.," together, "Defendants"), by their attorneys, Cowan, DeBaets, Abrahams & Sheppard LLP, respectfully submit this Memorandum in Support of their Motion to Dismiss the First Amended Complaint (the "FAC") of plaintiff Carol M. Highsmith ("Highsmith") and the This is America! Foundation (the "Foundation," together with Highsmith, "Plaintiffs") pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Alamy respects photographers, the images they create, and the law.  Alamy is proud that it treats photographers fairly, paying them a commission for licensing the images they contribute to its online platform that is significantly higher than the industry standard.[1]  FAC ¶ 95.[2]  It also treats its customers fairly, charging a reasonable price for access to copyrighted and public domain images uploaded by contributors.  Moreover, Alamy treats the world around it fairly, donating a set portion of its donating approximately 48% of its pre-tax and pre-charitable donations operating profit since 2007 to a charity which promotes medical and educational aims.

In light of this record as a good corporate citizen, Alamy is surprised to find itself on the receiving end of a meritless lawsuit with an absurd $1.1 billion price tag.  FAC ¶ 17.  An examination of the FAC shows this lack of merit:  each of the Plaintiffs' claims against Alamy fail as a matter of law.[3]

Count II, which Highsmith alone brings under Section 1202 of the Copyright Act

---

[1] Alamy also runs a "100% Students" program, giving student contributors 100% of the proceeds from licensing of their images for two years, without any limitation on profits earned.

[2] The FAC is attached as Exhibit A to the Bowen Declaration, submitted with the Motion to Dismiss of Defendant LCS as Docket Number 48.  In order to reduce the number of pages submitted to the Court, this Motion refers to the same Declaration.  References to Exhibits to the FAC will be cited as "FAC Ex. A," *et seq*.

[3] Indeed, none of the counts against any defendant have merit.  Defendants join the motions to dismiss concurrently filed by Defendant Getty Images (US) Inc. and Defendant License Compliance Services, Inc. ("LCS").

("Section 1202"), fails because that statute does not apply to public domain works. Significantly, Section 1202 explicitly requires intent to infringe a copyright (or knowledge of such infringement). Because public domain works cannot be infringed, Alamy could not have had the requisite intent to violate Section 1202 in regards to the Public Domain Photographs.

Counts VI and VII, Plaintiffs' Lanham Act claims, fail because they are preempted by copyright law. The Supreme Court explained in *Dastar v. Twentieth Century Fox* that such preemption is especially important to prevent plaintiffs from misusing non-copyright statutes to constrain the free use of public domain works. 539 U.S. 23 (2003).

Plaintiffs also bring two state law counts. Count X, under New York's Business Law, fails because Plaintiffs have not demonstrated injury to either themselves or the public interest. Count XIII, Plaintiffs' common law unfair competition claim, is duplicative of—and therefore preempted by—federal trademark law. Moreover, both of these counts fail under the Communications Decency Act, 47 U.S.C. § 230, *et seq.,* which immunizes providers of "interactive computer services" like Alamy against liability arising from third-party content.

Finally, Plaintiffs' FAC fails to plead personal jurisdiction over Alamy. The FAC contains no allegation of any specific New York conduct and, as a result, fails to establish the requisite "substantial nexus" between Alamy's conduct and Plaintiffs' claims.

## <u>STATEMENT OF FACTS[4]</u>

Alamy is a digital stock photography agency based in England. With over 85 million stock photos, it is one of the largest platforms worldwide for photographers, illustrators, videographers, and image collectors to upload images and make them available for sale. FAC ¶ 93 (citing outdated version of http://www.alamy.com (last accessed Aug 30, 2016)), 94

---

[4] The Statement of Facts is premised on allegations from the FAC. For purposes of this motion only, Plaintiffs' referenced factual allegations are deemed to be true.

2

(uploaders provide images to Alamy).  For this reason, over 116,000 registered customers, including many major publishers, use Alamy's services on a regular basis.  Alamy, Inc., a separate corporation named in the FAC, is merely a sales office, and does not take part in any other of Alamy's operations.

How Alamy Contributors Upload Images

Anyone who is a copyright holder for an image, who has permission from an image's copyright owner, or has a copy of a public domain image can sell digital copies of that image on Alamy's platform.[5]  Alamy does not edit or curate images, but it does enforce image quality standards that are explained in its submission guidelines.  However, because Alamy recognizes the value of culturally important archival and historical material, it relaxes its submission requirements for older and public domain images.

A contributor may elect one of two licensing models for their sales:  rights managed ("RM") or royalty-free ("RF").  *See, e.g.,* FAC ¶ 103.  These terms do not refer to copyright ownership, but rather to long-held pricing and licensing conventions within the stock photo industry.  RM images are sold to users for a specific use with restrictions, *i.e.*, for limited times, for limited purposes, or for use in limited geographical areas.[6]  In contrast, RF users have broad permission to use an image for many purposes.  The contributor also provides information about the image, such as its author, any collection of which it is a part, a caption, and keywords for

---

[5] Contributors must agree to Alamy's standard contributor agreement, which warrants that the upload is with permission.  Though this suit does not allege copyright infringement, in accordance with the Digital Millennium Copyright Act ("DMCA") and other applicable laws, Alamy has adopted a policy of immediately deleting images and in some cases terminating, in appropriate circumstances, account holders who infringe the intellectual property rights of anyone.     Alamy,     Terms     and     Conditions,     *available     at* http://www.alamy.com/terms/general.asp#policy (last accessed August 30, 2016).

[6] To give a specific example, the guidelines recommend that images—whether under copyright or public domain—with recognizable people or distinctive properties for which the contributor does not submit appropriate releases with the image files are licensed as RM.

finding the image in searches.  *See* FAC ¶ 99; 101.  Because of its scale, Alamy relies on contributors to provide such information for its over 85 million photos.

How Alamy Customers Use Images

When a contributor's upload meets Alamy's technical quality standards, Alamy makes the images available for license to potential users, who range from individual designers or editors to major publishers or advertising agencies.  These users conduct keyword searches to find high-quality photos or videos they may legally use.  Alamy offers a broad, eclectic collection, in part because Alamy does not edit its contributors' submissions other than for technical quality.  For example, while the Library of Congress ("Library") Prints and Photographs Collection offers a number of public domain photos of the Jefferson Memorial, a magazine editor could find a much larger selection of high-quality images of the Jefferson Memorial on Alamy's website, as well as many other image subjects to illustrate other articles.  Such a time-saving, "one stop-shopping" service is why customers use Alamy when searching for stock photography, particularly in this digital era of tight publishing deadlines.

How Alamy Protects Its Images

Consistent with industry practice, Alamy takes steps to reduce the use of its contributors' images without permission and includes an automatic watermark on all publicly-displayed images to identify the image as sourced from the Alamy collection.  This helps deter third parties from simply downloading images without paying for them.  To further deter misuse of its contributors' digital files, like many other image aggregators in the stock industry, Alamy contracts with a technology vendor to search the internet for sites hosting files that match images sourced through Alamy.  When such a match is found and Alamy has no record of granting a license for the use, Defendant LCS sends a letter to the owner of the site.  That letter explains the

4

potential problem, and asks for proof that the user has permission to use the image, or for payment.

<u>Alamy's Public Domain Images</u>

It is no secret that Alamy, like many stock photo agencies and photo archives, allows access to public domain photography for a fee.  FAC Ex. G at 1.  Publishers and others rely on Alamy and its competitors as sources of historical, archival, and culturally relevant material, and for the service of providing easy searching and access to a broad range of subjects.  For example, one of the most published images, and one in the public domain, Dorothy Lange's *Migrant Mother*, is available on Alamy from a number of historical collections.  In this regard Alamy is merely a modern entrant into a long industry tradition of preserving, cataloging, and distributing important historical and archival images.[7]

Like other stock image services, Alamy charges for the access it provides to public domain photos and permission to use the copy in its collection.  Generally, versions of these images are widely available and are not exclusive to Alamy.  If a letter was sent to someone using the same image from an alternate source, the user would simply explain that Alamy was not the source of the image and the matter would not go forward.  Indeed, Plaintiffs admit that this is exactly what happened regarding the only two recipients of letters on Alamy's behalf referred to in the FAC.  FAC ¶¶ 118, 122, 154.

<u>The Highsmith Public Domain Photos</u>

According to the FAC, this litigation concerns public domain photos by Carol Highsmith (the "Public Domain Photographs") that are allegedly available through Alamy and uploaded by

---

[7] Although an overview of the history of photography is outside the scope of the present motion, as early as 1926, one of America's first stock photo libraries, Culver Pictures, offered public domain images from the 19th and 20th centuries.  Similarly, the Bettmann Archive, founded in 1936, has offered images going back to the Civil War era for 80 years.

various contributors.  FAC ¶ 97.  According to the FAC, LCS then sent two letters to proprietors of websites that featured photos that matched a Public Domain Photograph:  one to a third party in Pennsylvania, and one to the Foundation in Maryland.  FAC ¶¶ 118, 122.  The first recipient, as far as can be ascertained from the FAC, ignored the request in the letter to contact LCS and nothing further happened.  FAC ¶ 154.

In contrast, Plaintiff Highsmith, on behalf of the Foundation, responded to LCS's letter, which gave contact information "**if we are wrong**" or "if you believe you have mistakenly received this letter."  Ex. A at 1, 2 (emphasis in original).  Highsmith contacted LCS via telephone to let it know that the photograph in question was part of the public domain.  FAC ¶¶ 122, 134-37.  Shortly thereafter, LCS appropriately closed the case.  *Id.*

## ARGUMENT

## I.  MOTION TO DISMISS STANDARD.

A complaint must be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the allegations, taken as true, show the plaintiff is not entitled to relief.  Claims that, even taken as true, fail to satisfy requisite statutory elements are properly dismissed when such deficiency appears on the face of the complaint.  *See, e.g., Int'l Diamond Imports., Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F. Supp. 3d 494, 516-17 n. 2 (S.D.N.Y. 2014) (dismissing copyright infringement claims "as required by the plain terms of the statute") (citation omitted).

Further, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court adopted a "plausibility" requirement, obligating a pleader to amplify a claim with factual allegations sufficient to render a claim plausible.  550 U.S. 544, 570 (2007).  A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the

speculative level." *Id.* (citations omitted); *see also, AppSoft Dev., Inc. v. Diers, Inc.*, No. 3:13-CV-1520-J-32JBT, 2014 WL 3893316, at *4 (M.D. Fla. Aug. 8, 2014) (granting motion to dismiss Section 1202(a) claim based on only "generalized allegations" that "failed to plausibly state a claim for destruction of copyright management information"); *Merideth v. Chicago Tribune Co., LLC*, No. 12 C 7961, 2014 WL 87518, at *4 (N.D. Ill. Jan. 9, 2014) ("Something other than speculation must support [a Section 1202] allegation").

In considering a motion to dismiss, the Court must construe all non-conclusory factual allegations in the complaint as true and "draw all reasonable inferences in the [non-movant's] favor." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, the Court need not accept conclusory allegations or legal conclusions masquerading as facts. *Aqua Creations USA Inc. v. Hilton Worldwide, Inc.*, 487 F. App'x 627, 629 (2d Cir. 2012) (citations omitted).

In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and documents and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence. *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014). Documents of which judicial notice may be taken include public records and information obtained from a governmental website. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Reed Const. Data Inc. v. McGraw-Hill Cos., Inc.*, 638 F. App'x 43, 47 n. 2 (2d Cir. 2016); *Cali v. E. Coast Aviation Servs., Ltd.*, 178 F. Supp. 2d 276, 287 n. 6 (E.D.N.Y. 2001) (taking judicial notice of government documents).

## II.     HIGHSMITH HAS NOT PLAUSIBLY ALLEGED A SECTION 1202 CLAIM.

### A.     Highsmith Dedicated Her Photos to the Public Domain.

According to the FAC, beginning in about 1988 and continuing to the present, Highsmith

7

has dedicated the Public Domain Photographs to the public domain through the United States

Library of Congress.  FAC ¶¶ 4-5.  While the FAC makes the self-serving and conclusory

assertion that the dedication of the Public Domain Photographs was something other than a

dedication to the public domain, or was limited in scope, such an argument is misleading, and

belied by the text of the "Instrument of Gift" attached to FAC as Exhibit I.

When examining copyright "a page of history is worth a volume of logic."  *New York

Trust Co. v. Eisner*, 256 U.S. 345, 349 (1921) (Holmes, J.) (cited in *Eldred v. Ashcroft*, 537 U.S.

186, 188 (2003)).  For hundreds of years, courts and legal documents have consistently used the

term of art "dedicated to the public" when referring to property, including intellectual property,

which becomes part the public domain through the action or inaction of an owner or copyright

holder.  *See, e.g., Baker v. Taylor*, 2 F. Cas. 478 (C.C. S.D.N.Y.1848) (citing *Wheaton v. Peters*,

33 U.S. 591 (1834)); *American Code Co., Inc. v. Bensinger*, et al., 282 F. 829, 833 (2d Cir. 1922)

("Publication of an intellectual production without copyrighting it causes the work to fall into the

public domain.  It becomes by such publication dedicated to the public, and any person is

thereafter entitled to publish it for his own benefit.) (cited in *Kramer v. Newman*, 749 F. Supp.

542, 551 (S.D.N.Y. 1990)); *Gianni Cereda Fabrics, Inc. v. Bazaar Fabrics, Inc.*, 335 F. Supp.

278, 281 (S.D.N.Y. 1971); *Greeff Fabrics, Inc. v. Malden Mills Indus., Inc.*, 412 F. Supp. 160,

162 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 556 (2d Cir. 1977); *Filmvideo Releasing Corp. v. Hastings*,

426 F. Supp. 690, 694–95 (S.D.N.Y. 1976).

Highsmith's Instrument of Gift uses precisely that language in stipulating that she

"[t]hereby dedicate[d] to the public" the copyrights in the Public Domain Photographs.  FAC

Ex. I.  Alamy, and the public at large, are entitled to rely on that statement.

Indeed, the Library (of which the U.S. Copyright Office is a part) has relied on that

language for decades in classifying and treating the Public Domain Photographs as part of the public domain.  The website of the Library flatly states that "Ms. Highsmith has stipulated that her photographs are in the public domain."  Bowen Decl. Ex. B (Carol M. Highsmith, Rights and Restrictions Information, Prints and Photographs Division, Library of Congress, *available at* https://www.loc.gov/rr/print/res/482_high.html (last accessed August 16, 2016)); *Id.* Ex. C (Copyright and Other Restrictions That Apply to Publication/Distribution of Images:  Assessing the Risk of Using a P&P Image, Prints and Photographs Reading Room, Library of Congress, *available at* http://www.loc.gov/rr/print/195_copr.html (last accessed August 24, 2016)) (listing the Highsmith Collection as the example of "images [that] have been placed in the public domain by the creator or rights holder.").  Further, the FAC itself attaches an Exhibit from the Library's website that that makes it clear that there are "[n]o known restrictions on publication" of the Public Domain Photos.  FAC Ex. J at 2.

Moreover, the Instrument of Gift is phrased in the broadest possible terms, stating that Highsmith dedicated to the public "all rights, including copyrights throughout the world, that [she] possess[ed]" in the photographs.  FAC Ex. I; *see also id.* at ¶ 4 (extending such terms to future donations).  Unable to deny the import of that expansive phrasing, the FAC misleadingly suggests that the dedication of the Public Domain Photographs was limited by certain "terms and conditions."  FAC ¶ 56-57.  However, these "terms and conditions" are merely attempts by Plaintiffs' attorneys to fit within the statutory provisions of Section 1202 (as seen below). Indeed, the "conditions" given in the FAC that "the public may reproduce and display the work for free" are not conditions at all, but a clear statement of the lack of restrictions on Ms. Highsmith's gift.  FAC ¶ 57.

In light of Ms. Highsmith's own words and the repeated confirmation of the Library, it

9

cannot be disputed that the Instrument of Gift placed the Public Domain Photographs in the public domain.  As a result, the FAC's insistence that Defendants have somehow "infringed" upon Highsmith's "exclusive rights under 17 U.S.C. § 106" in the Public Domain Photographs are unavailing.  By her own conscious action, she has no such exclusive rights.

      **B.**      **Section 1202 Does Not Apply to Public Domain Works.**

When Congress considered and passed Section 1202 as part of the landmark Digital Millennium Copyright Act of 1998, it did so expressly to protect the integrity of information needed to protect copyrighted works.  The Senate report on the DMCA made it plain that CMI "is an important element in establishing an efficient [i]nternet marketplace in ***copyrighted works*** free from governmental regulation."  S. Rep. No. 105-190, at 16 (1998).  It went on to clarify that Section 1202 "does not mandate the use of CMI, nor does it prescribe the choice of any particular type of CMI for those who do use it.  It merely protects the integrity of CMI if a party chooses to use it ***in connection with a copyrighted work*** by prohibiting its deliberate deletion or alteration."  *Id*. at 34.

Congress' intent for Section 1202 to cover copyrighted works only is inseparable from the Section's statutory language.  Indeed, Subsection 1202(a) requires a violator to knowingly (or with "reasonable grounds to know") act with intent ***to induce, enable, facilitate, or conceal infringement***.  17 U.S.C. § 1202(a) (emphasis added); *Ward v. Nat'l Geographic Soc*., 208 F. Supp. 2d 429, 450 (S.D.N.Y. 2002); *Schiffer Pub., Ltd. v. Chronicle Books, LLC*, No. Civ.A. 03–4962, 2004 WL 2583817, at *13 (E.D. Pa. Nov. 12, 2004).  Likewise, subsection 1202(b) requires a violator to know or "hav[e] reasonable grounds to know, that their action will ***induce, enable, facilitate, or conceal an infringement***."  17 U.S.C. § 1202(b) (emphasis added); *Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*, 345 F.3d 922, 927 (6th Cir. 2003); *AppSoft Dev., Inc.*, 2014 WL 3893316, at *4; *Keogh v. Big Lots Corp*., No. 3:04-00738, 2006 WL 1129375, at

*2 (M.D. Tenn. Apr. 27, 2006) (granting motion to dismiss); *Schiffer Pub., Ltd.*, 2004 WL 2583817, at *14.

Both of these sections contain an element of knowing intent to infringe.  Of course, it is impossible to infringe the copyright in public domain works (or to have a knowing intent to do so), because they are not subject to copyright.  *Dastar,* 539 U.S. at 34 (the public may use public domain works "at will and without attribution"); *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 364 (1991); *Silverstein v. Penguin Putnam, Inc.*, 522 F. Supp. 2d 579, 598 (S.D.N.Y. 2007); *United States v. Elcom Ltd.,* 203 F. Supp. 2d 1111, 1134 (N.D. Cal. 2002) ("Any person may use the public domain work for any purpose—quoting, republishing, critiquing, comparing, or even making and selling copies.").

The case of *Stern v. Sinatra*, 99 F. App'x 777 (9th Cir. 2004), is instructive.  There, a photograph once protected by copyright had become part of the public domain.  *Id*. at 778.  The court held that, "[w]ithout a valid copyright in the photograph, [the plaintiff's] additional claims against Sinatra for . . . violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1203, failed as a matter of law."  *Id*.; *see also Elcom Ltd.*, 203 F. Supp. 2d at 1141 ("Nothing within the DMCA grants any rights to anyone in any public domain work," which "remains in the public domain and any person may make use of the public domain work for any purpose").

Because the Public Domain Photographs are also in the public domain, Highsmith's Section 1202 claim also fails as a matter of law.

**C.      Highsmith Has Not Alleged That Alamy Intentionally Removed or Altered CMI.**

Even if Highsmith's Section 1202 claim could be applied to the Public Domain Photographs, Highsmith fails to assert the requisite elements of such a claim.  The FAC alleges that Alamy provided or distributed false CMI by posting contributors' uploads to its website with

information provided by those contributors.  FAC ¶¶ 99-101.  This argument fails because the FAC never alleges, except in an impermissibly conclusory fashion, that Alamy removed any CMI "intentionally," as required by the statute.  *Thron v. HarperCollins Publishers, Inc.*, No. 01 CIV.5437(JSR), 2002 WL 1733640, at *1 (S.D.N.Y. July 26, 2002) (Rakoff, J.); *see also Chevrestt v. American Media, Inc.*, No. 16 Civ. 5557 (LCS), 2016 WL 4557318 (S.D.N.Y. Aug. 31, 2016).  Nor does it allege that Alamy had actual knowledge that its contributors had removed or altered CMI.  *Keogh*, 2006 WL 1129375, at *2.

## III.   PLAINTIFFS' LANHAM ACT CLAIM IS FORECLOSED BY THE SUPREME COURT DECISION IN *DASTAR*.

Instead of rectifying their failure to plead a copyright claim in their original Complaint, Plaintiffs add more invalid claims to their FAC.  Counts VI and VII allege that Alamy violated Section 43(a) of the Lanham Act by making false or misleading statements of fact "that are likely to cause confusion, mistake, or deception as to the affiliation or connection" of Defendants with Plaintiffs and as to Plaintiffs' "sponsorship, association, or approval" of Defendants' services. FAC ¶¶ 238; 247.  Plaintiffs also allege that Defendants have "misrepresented the nature, characteristics, or qualities" of the Public Domain Photos.  *Id.* ¶¶ 239; 248.

These claims fail as a matter of law under the Supreme Court's 2003 decision in *Dastar*, upon which Plaintiffs purport to rely.  539 U.S. at 33-34; *see* FAC ¶ 222.  *Dastar*, like this case, involved works that were in the public domain, and not subject to copyright.  539 U.S.at 33-34. As is the case here, the *Dastar* plaintiffs alleged that users of the public domain works in question did not provide the proper attribution of authorship for those works, thus making a "false or misleading representation of fact, which . . . [was] likely to cause confusion" in consumers.  *Id* at 31 (ellipses in original).

The Court held that the Lanham Act did not create a cause of action for

12

"misrepresentation of authorship of noncopyrighted works."  *Id*. at 35-36.  It reasoned that copyright law, not the Lanham Act, was designed to "protect creativity" and that only copyright law specifically addresses the subject of attribution of "communicative goods" like novels, films, or photographs.  *See id*. at 37; *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 307 (S.D.N.Y. 2011).

The *Dastar* Court was particularly concerned with maintaining the "carefully crafted bargain" that copyright law strikes between the public and creators, which allows works in the public domain to be used "at will and without attribution."  *Dastar*, 539 U.S. at 34-35.  As such, the Court noted that it has traditionally been "careful to caution against misuse or over-extension [of the Lanham Act] into areas traditionally occupied by . . . copyright" in order to avoid upsetting that bargain.  The Court memorably warned that a claim such as Plaintiffs propose would create "a species of mutant copyright law that limits the public's federal right to copy and to use expired copyrights."  *Id*. at 34 (internal quotation marks omitted).

Undeterred by this clear Supreme Court ruling, Plaintiffs attempt to plead around *Dastar* by arguing that Defendants have made misrepresentations that will cause confusion as to Plaintiffs' "affiliation or connection" with Defendants or about "the nature, characteristics, or qualities" of the Public Domain Photos.  FAC ¶¶ 238-39; 247-48.  However, Plaintiffs' claim has already been foreclosed by the Second Circuit and this Court.

The Second Circuit has emphasized the breadth of *Dastar*, noting that it stands for the "general principle[] that intellectual property owners should not be permitted to recategorize one form of intellectual property as another thereby extending the duration of protection beyond that which Congress deemed appropriate for their actual creative efforts.  *Chosun Int'l, Inc. v. Chrisha Creations, Ltd.*, 413 F.3d 324, 328 (2d Cir. 2005).  As such, it is of little import which

13

branch of the Lanham Act Plaintiffs pleads.  Moreover, this Court has already rejected

maneuvers such as Plaintiffs' in *Antidote Int'l Films, Inc. v. Bloomsbury Publishing PLC,* 467 F.

Supp. 2d 394, 398 (S.D.N.Y. 2006).  In that case, this Court rejected an "affiliation or

connection" claim as a distinction from other Lanham Act claims without a difference, which

merely restated an attribution claim "in different terms."  *Id*. at 399.  This reasoning was adopted

by another court in this District in *Gary Friedrich*, which also dismissed Lanham Act and state

law claims on similar grounds.  *Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, 713 F.

Supp. 2d. 215at 234 (S.D.N.Y. 2010) (citing *Antidote Int'l*, 467 F. Supp. 2d at 400).

Likewise, Plaintiff's strategic claim that Defendants "misrepresented the nature,

characteristics, or qualities" of the Public Domain Photos fails because such alleged

"misrepresentation" reaches no further than copyright law.  Faced with a similar allegation, the

*Gary Friedrich* court held that the Supreme Court's prohibition in *Dastar* extends to such claims.

*Gary Friedrich Enters.*, 713 F. Supp. 2d. at 234.  As this Court explained in *Antidote Int'l*, a

copyright concept like authorship or public domain status cannot be a "nature, characteristic or

quality" of a product that is cognizable under the Lanham Act, or else the central holding of

*Dastar* would be easily sidestepped by careful pleading.  467 F. Supp. 2d at 399.  By the same

token, questions of copyrightability and infringement are properly addressed by copyright law,

not by the Lanham Act.

## IV.   PLAINTIFFS HAVE FAILED TO PLAUSIBLY ALLEGE A NEW YORK BUSINESS LAW CLAIM.

Plaintiffs lack standing to allege a claim pursuant to § 349 New York's Business Law

("Section 349").  To sustain a claim under Section 349, a plaintiff must demonstrate three

elements:  (i) that the challenged act or practice was consumer-oriented; (ii) that it was

misleading in a material way; and (iii) that the plaintiff suffered injury as a result of the

deceptive act. *Classic Liquor Imports., Ltd. v. Spirits Int'l B.V.*, No. 15 CIV. 6503 (JSR), 2016 WL 4419457, at *16 (S.D.N.Y. Aug. 19, 2016) (Rakoff, J.). While a plaintiff need not demonstrate pecuniary harm, she must allege actual harm. *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 WL 4367991, at *13 (S.D.N.Y. Aug. 12, 2016). Here, Plaintiffs offer only the conclusory allegation that Defendants' conduct—specifically, "holding themselves out as falsely as the agent of Ms. Highsmith, by charging licensing fees for Highsmith Photos when no license is needed, and by collecting settlements of copyright infringement claims for Highsmith Photos when it had no right to assert such claims"—"have caused and will continue to cause economic damages and irreparable injury" to Plaintiffs. FAC ¶¶ 270; 272. Plaintiffs offer no further details connecting Defendants' conduct to Plaintiffs' purported damages. To the extent the FAC relies on an assertion of reputational harm, Plaintiffs have not alleged the concomitant element of public harm. *See MDB LLC v. Hussain,* No. 14-CV-9281 (VEC), 2016 WL 1267793, at *6 (S.D.N.Y. Mar. 29, 2016) (" Because Hussain has only alleged harm to herself and the FASHION DIGITAL mark, she has not alleged the required element of public harm.").

Moreover, Plaintiffs fail to establish the requisite "specific and substantial injury to the public interest over and above ordinary trademark infringement and dilution." *Sprint Sols., Inc. v. iCell Guru, Inc.*, No. 14 CV 3539, 2016 WL 3198248, at *4 (E.D.N.Y. June 7, 2016) (citations omitted). That members of the public may be confused as to Highsmith's affiliation with Defendants is precisely the type of claim that "courts in this Circuit have routinely dismissed . . . as being outside the scope of [Section 349]." *Sofa Doctor, Inc. v. New York Couch Doctor, Inc.*, No. 14-CV-05496 (PKC), 2016 WL 951523, at *3 (E.D.N.Y. Mar. 9, 2016) (internal citations removed). Trademark disputes "do not pose a significant risk of harm to the public health or

interest and are therefore not the type of deceptive conduct" that Section 349 was designed to address. *Id.* (citing *Kaplan, Inc. v. Yun,* 16, F. Supp. 3d 341, 352 (S.D.N.Y. 2014)).  Plaintiffs' suggestion that members of the public have been harmed by paying for something they otherwise would not have paid for is similarly insufficient to sustain the first prong of a Section 349 claim. *See LBF Travel, Inc. v. Fareportal, Inc.*, No. 13 Civ. 9143, 2014 WL 5671853, at * 12 (S.D.N.Y. Nov. 5, 2014) (allegations of consumer harm insufficient to sustain Section 349 claim, even if plaintiff had alleged that consumers paid more for an allegedly inferior product); *Reed Constr. Data Inc. v. McGraw-Hill Cos., Inc.*, 745 F. Supp. 2d 343, 355 (S.D.N.Y. 2010) (same); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 274–75 (S.D.N.Y. 2003) ("the business does not have a cognizable cause of action under § 349" where alleged public harm consisted of consumers being forced to "pay much higher prices to purchase the same items" from a competitor); *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999) ( rejecting Section 349 claim on basis that "consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices," have "suffered an injury under General Business Law § 349").  Finally, as discussed above, Plaintiffs offer no specific actions that Defendants have taken with respect to New York consumers, a "critical question" in assessing a Section 349 claim.  *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995). Plaintiffs' conclusory statement that Defendants' conduct has affected members of the public in New York (FAC ¶ 270) is insufficient to sustain their claim.

## V.     PLAINTIFFS HAVE FAILED TO PLAUSIBLY ALLEGE A NEW YORK COMMON LAW CLAIM.

Plaintiffs' common law unfair competition claim is duplicative of, and therefore preempted by, federal trademark law, and should be similarly dismissed.  *Compco Corp. v. Day-Brite Lighting, Inc.,* 376 U.S. 234 (1964).  Plaintiffs allege that Alamy has "misappropriated Ms.

Highsmith's labor, skill, and expenditures . . . for its own gain," in addition to causing

"confusion as to the association or relationship" between Alamy and Plaintiffs.  FAC ¶ 287.

Specifically, Plaintiffs maintain that Alamy has engaged in unfair competition by (1) allegedly

providing or distributing false copyright management information for the Public Domain

Photographs, and (2) by purportedly holding itself out as Highsmith's "agent" in connection with

LCS' rights enforcement efforts related to the Public Domain Photographs.  Plaintiffs'

"boilerplate recitation of an unfair competition cause of action," however, is insufficient as a

matter of law to sustain a claim for unfair competition.  *See Twombly,* 550 U.S. at 555 (holding

that a "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do").

To sustain an unfair competition claim, Plaintiffs must first demonstrate that Alamy acted

in bad faith, which they have not done.  *Bongo Apparel, Inc. v. Iconix Brand Group, Inc.,* 856

N.Y.S.2d 22 (Sup. Ct. 2008) ("While there is no complete list of activities which constitute

unfair competition under New York law, the essence of an unfair competition claim is that one

may not act in bad faith to misappropriate the skill, expenditures, and labor of another"); *Luv n'*

*Care, Ltd. v. Mayborn USA, Inc.,* 898 F.Supp.2d 634, 643 (S.D.N.Y. 2012) ("a plaintiff asserting

an unfair competition claim under New York common law must also show that defendant acted

in bad faith"); *see also BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 617

(S.D.N.Y. 2010).

Plaintiffs' allegations are entirely lacking in this necessary element.  Plaintiffs never

plausibly allege that Alamy knew that CMI had been improperly removed but nonetheless

proceeded to distribute the Public Domain Photographs.  Given their failure to plausibly allege

that Alamy acted with bad faith, Plaintiffs are left with nothing more than a trademark claim squarely addressed by the Lanham Act. *Heptagon Creations, Ltd. v. Core Group Marketing LLC,* No. 11 Civ. 1794(LTS)(AJP), 2011 WL 6600267, at \*9 (S.D.N.Y. Dec. 22, 2011) (a common law unfair competition claim under New York law "is identical to a Lanham Act claim, save for the additional requirement that plaintiff show defendant's bad faith."). Accordingly, Plaintiffs' unfair competition claim is duplicative of their Lanham Act claims and is preempted by federal law. *Compco Corp.*, 376 U.S. at 239 (state law unfair competition claim preempted where comparable federal cause of action exists); *compare Roy Export Co. v. Columbia Broad. Sys.,* 503 F. Supp. 1137 (S.D.N.Y. 1980), *aff'd,* 672 F.2d 1095 (2d Cir.), *cert. den.,* 459 U.S. 826 (1982) (award of punitive damages upheld on ground that federal and state claims at issue were sufficiently dissimilar so that state law did not stand "as an obstacle to the accomplishment and execution of the purposes and objectives of Congress," which would trigger federal preemption). While the law of unfair competition in New York "encompasses a broad range of unfair practices," its "reach is not . . . limitless." *CA, Inc. v. Simple.com, Inc.,* 621 F. Supp. 2d 45, 52-53 (E.D.N.Y. 2009). Moreover, Plaintiffs have failed to plead that Defendants' conduct allegedly giving rise to an unfair competition claim occurred in New York (*see supra,* Section II), nor have Plaintiffs asserted that such conduct caused harm in New York. *Id.*[8]

Finally, application of New York's common law would be improper here in any event given its potential to contradict federal copyright policy concerning public domain works. *See* Nimmer § 1.01[B][3][a] at 1-77 ("[T]he general proposition pertains in copyright law, as

---

[8] Plaintiffs have also failed to establish that Alamy misappropriated a commercial advantage belonging exclusively to Plaintiffs. *LoPresti v. Mass. Mt. Life Ins. Co.*, 820 N.Y.S.2d 275 (2d Dep't 2006). Alamy could not have misappropriated a commercial advantage to exclusively belonging to Plaintiffs because Highsmith dedicated the Public Domain Photographs to the public domain.

elsewhere, that a state law is invalid that stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.") (quotation marks omitted).  Plaintiffs seek an end run around federal copyright law—specifically, the protections accorded users of public domain materials—yet "federal policy 'may not be set at naught, or its benefits denied' by the state law." *Sears,* 376 U.S. at 229 (quoting *Sola Elec. Co. v. Jefferson Elec. Co.*, 317 U.S. 172, 173, 176 (1942)).  Highsmith voluntarily dedicated the Public Domain Photographs to the public domain, permitting the public to exploit the Photographs, including for profit.  As a result, imposing liability under state law for copying and selling the Public Domain Photographs would impermissibly "permit the State to block off from the public something which federal law has said belongs to [it]," namely, the right to exploit works in the public domain.  *Id.* at 232.  Indeed, "New York has expressly accepted this principle as a limitation on the reach of causes of action in its courts for common law unfair competition."  *See Fin. Info., Inc. v. Moody's Inv'rs Serv., Inc.,* No. 81 CIV. 6001(RLC), 1986 WL 7791, at *4 (S.D.N.Y. July 10, 1986), *aff'd* 808 F.2d 204 (2d Cir. 1986).  Plaintiffs' common law claim—and state law statutory claim—are accordingly preempted.  *See, e.g.*, *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, No. CV 11-3677(ARL), 2013 WL 1209041, at *7 (E.D.N.Y. Mar. 25, 2013) (finding state law unfair competition claim preempted where product was in the public domain); *H.W. Wilson Co. v. Nat'l Library Serv. Co.*, 402 F. Supp. 456, 458-59 (S.D.N.Y. 1975) (denying plaintiff's request for preliminary injunction because, in light of defendant's federal right to copy public domain work, plaintiff could not show likelihood of succeeding on the merits of New York common law unfair competition claim).

## VI.   PLAINTIFFS' STATE LAW CLAIMS ARE BLOCKED BY THE COMMUNICATIONS DECENCY ACT.

Although they separately fail for the reasons stated above, both of Plaintiffs' state law

claims are also blocked by the federal Communications Decency Act of 1996, 47 U.S.C. § 230, *et seq*. (the "CDA").  State law claims may be dismissed for failure to state a cause of action when their foreclosure by the CDA is evident from the face of the complaint.  *See, e.g., Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 28 (2d Cir. 2015) (defamation); *Shiamili v. Real Estate Grp. of New York, Inc.*, 17 N.Y.3d 281, 293 (2011) (dismissing unfair competition claim under the more permissive "notice pleading" regime of New York state).

The CDA immunizes providers of "interactive computer services" against liability arising from third party content.  *Ricci*, 781 F.3d at 27-28; *Seldon v. Magedson*, No. 11 CIV. 6218 PAC MHD, 2012 WL 4475274, at *16 (S.D.N.Y. July 10, 2012), *rep. and recommendation adopted*, No. 11 CIV. 6218 PAC MHD, 2012 WL 4475020 (S.D.N.Y. Sept. 28, 2012).  Section 230(c)(1) of the CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  Section 230(e)(3) preempts any state law that is inconsistent with the protections that Section 230 offers.  Thus, under Section 230 internet service providers are shielded from liability arising from state-law claims that are premised on posts of third party content.  *Ricci*, 781 F.3d at 27-28; *Seldon*, 2012 WL 4475274, at *16; *see also Murawski v. Pataki*, 514 F.Supp.2d 577, 591 (S.D.N.Y. 2007) (citing *Gucci Am., Inc. v. Hall & Assocs.*, 135 F.Supp.2d 409, 417 (S.D.N.Y. 2001) (citing legislative history of the CDA)).

Courts have routinely held that Section 230 immunity should be broadly construed.  *See Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F.Supp.2d 690, 699-700 (S.D.N.Y.2009) (collecting cases).  Websites, such as Alamy web platform, are considered to be "interactive computer services" that falls within the potential scope of section 230 immunity.  *Ricci*, 781 F.3d at 28; *Seldon*, 2012 WL 4475274 at *16.  In addition, website operators like Alamy are

20

considered to be providers of interactive computer services. *See, e.g., Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 474 (E.D.N.Y. Dec. 13, 2011).

This grant of immunity applies when the interactive computer service provider is not also an "information content provider"—a person or entity who is "responsible, in whole or in part, for the creation or development of" the complained-of content.  47 U.S.C. § 230(f)(3); *Seldon*, 2012 WL 4475274 at *16; *see also Ascentive, LLC,* 842 F. Supp. 2d at 472.  "Case law . . . suggests that one is responsible for the 'development' of information when he engages in an act beyond the normal functions of a publisher (such as deciding to publish, withdraw or modify third-party content) that changes the meaning and purpose of the content." *Id.* at 474 (citing *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1163 (9th Cir.2008)).

Here, it is undisputed that Alamy contributors upload the images on the site.  FAC ¶ 94; *supra* at 2-3.  Further, Plaintiffs have not alleged, except in a conclusory fashion, that Alamy provided any of the CMI associated with the Public Domain Photographs, or did anything to change the meaning and purpose of the content of such alleged CMI, whether intentionally or not. *See supra* at III.C.

## VII.   PLAINTIFFS' FIRST AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER ALAMY.

In addition to the reasons above, Plaintiffs' claims against Alamy should be dismissed for another independent and sufficient reason:  despite filing two Complaints, Plaintiffs fail to adequately plead personal jurisdiction over Alamy.  Because the Copyright Act does not contain its own jurisdictional provision, this Court must look to the law of New York to determine whether personal jurisdiction exists. *Centrifugal Force, Inc. v. Softnet Commc'n, Inc*., No. 08 CIV.5463 CM GWG, 2009 WL 1059647, at *3 (S.D.N.Y. Apr. 17, 2009) (citing *Overseas*

*Media, Inc. v. Skyortsoy,* 407 F. Supp. 2d 563, 567 (S.D.N.Y.2006) *aff'd,* 277 F. App'x. 92, 94,

2008 WL 1994981, at *1 (2d Cir. May 8, 2008)).  If jurisdiction is proper pursuant to New

York's Civil Procedure Law and Rules ("CPLR"), this Court must next determine whether

"asserting jurisdiction under that provision would be compatible with requirements of due

process established under the Fourteenth Amendment to the United States Constitution."  *Best*

*Van Lines, Inc. v. Walker,* 490 F.3d 239, 242 (2d Cir. 2007) (citing *Int'l Shoe Co. v. Washington,*

326 U.S. 310, 315 (1945)).

    In the case of Alamy, an English company, due process protects foreign actors based on

principles of minimum contacts and reasonableness.  *See Int'l Shoe*, 326 U.S. at 310.  Here, New

York's long-arm statute does not require Alamy to answer in New York for conduct that did not

occur within the state.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).[9]

    While Plaintiffs do not identify a specific provision of New York's long-arm statute

granting jurisdiction over Alamy, they appear to rely on CPLR § 302(a)(1).  To satisfy Section

302(a)(1), Plaintiffs must plead, among other things, that their claims arise directly from business

Alamy conducted in New York.  See N.Y. CPLR § 302(a)(1); *Reich v. Lopez*, 38 F. Supp. 3d

436, 457 (S.D.N.Y. 2014).  Instead, Plaintiffs' FAC parrots language from the statute, nakedly

asserting that Alamy has "contracted to supply goods and/or services in the State of New York,

and within this Judicial District, and actively conduct[s] business directly and through their

representatives in the State of New York, and within this Judicial District, in connection with the

matters giving rise to this action."  FAC ¶ 44; *see also* C.P.L.R. § 302(a)(1).  However, such

---

[9] Similarly, in the case of Alamy Inc., Plaintiffs improperly allege that jurisdiction is proper
pursuant to New York's long-arm statute.  For the reasons discussed below, New York's long-
arm statute cannot be the basis of personal jurisdiction over either Alamy or Alamy Inc.; having
failed to properly plead jurisdictional requirements twice, this Court should not permit Plaintiffs
to replead their jurisdictional argument with respect to Alamy Inc.

"conclusory and speculative allegations are not enough for § 302(a)(1) jurisdiction." *Pyramyd Stone Int'l Corp. v. Crosman Corp.*, No. 95 Civ. 6665, 1997 WL 66778, at *10 (S.D.N.Y. Feb. 18, 1997); *see also Virgin Enters. Ltd. v. Virgin Eyes LLC*, No. 08 Civ. 8564, 2009 WL 3241529, at *3 (S.D.N.Y. Sept. 30, 2009) (conclusory, unsubstantiated assertions "fail to meet even the minimal *prima facie* showing required to establish personal jurisdiction under § 302(a)(1)"). Because the FAC contains no allegation of specific conduct in New York, it fails this prong of New York's jurisdictional test.

Moreover, Alamy's few specific actions recited in the FAC does occurred entirely outside of New York. For example, as regards image ingestion, the Library of Congress is in Washington, D.C., and Alamy's image upload servers are located in the United Kingdom. As a result of Plaintiffs' failure to allege any specific New York conduct, Plaintiffs have failed to allege the requisite "substantial nexus" between Alamy's purported New York conduct and Plaintiffs' claims. *See Mantello v. Hall,* 947 F. Supp. 92, 100 (S.D.N.Y. 1996) (noting requirement). Thus, Alamy's actions do not support jurisdiction under CPLR § 302(a)(1).

Finally, the exercise of personal jurisdiction over a non-domiciliary comport with due process. *Best Van Lines*, 490 F.3d at 242; *Int'l Shoe*, 326 U.S. at 315. The mere presence of Alamy Inc. in New York does not create jurisdiction over Alamy Ltd., a related, but independently managed, foreign corporation. *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984). With no facts plausibly alleging the proper exercise of jurisdiction, Plaintiffs' claims should be dismissed.

## VIII.   PLAINTIFFS' ARGUMENTS ARE CONTRARY TO PUBLIC POLICY.

Finally, Plaintiffs' claims should be rejected because they are contrary to centuries of public policy regarding copyright. Congress, the Copyright Office, and the Supreme Court all agree on the importance leaving works in the public domain free for the public to use as it sees

fit.  *Golan v. Holder,* 565 U.S. ──, 132 S. Ct. 873, 885 (2012); *see also Dastar*, 539 U.S. at 33-34 (a copyright holder's rights are part of a "carefully crafted bargain" under which, once the "copyright monopoly has expired, the public may use the invention or work at will and without attribution") (internal citation removed).  In his *Eldred* dissent, Justice Stevens addressed the Constitutional implications of public domain policy, noting that "the requirement that . . . exclusive [copyright] grants be for 'limited Times' serves the ultimate purpose of promoting the 'Progress of Science and useful Arts' by guaranteeing that those innovations will enter the public domain as soon as the period of exclusivity expires."  *Eldred v. Ashcroft*, 537 U.S. 186, 223 (2003) (Stevens, J.) (dissent).  For that reason, once a work has entered the public domain, "the works do not revest in any rightholder. . . .  Anyone has free access to the public domain, but no one, after the copyright term has expired, acquires ownership rights in the once-protected works."  *Golan v. Holder*, 132 S. Ct. at 892.

Section 1202 and the Lanham Act have not been interpreted to the contrary.  The Supreme Court has noted that "copyright legislation generally has not affected works in the public domain," and pointed out the few occasions that Congress has excepted that rule.  *Golan*, 132 S. Ct. at 885-96 (listing the Copyright Act of 1790, the Corson Act of 1849, the Helmuth Act of 1874, the Jones Act of 1898; and 17 U.S.C. § 104A, 109(a) (Berne Convention)).  Notably, the Court did not recognize the DMCA or the Lanham Act as such legislation.

In clear opposition to the consistent and traditional goals of copyright policy makers and the courts outlined above, Plaintiffs argue that they should be permitted to remove works from the public domain and protect them, in certain respects, forever.  However, the Second Circuit, prefiguring the Supreme Court's admonishment against "limit[ing] the public's federal right to copy and to use expired copyrights" through the Lanham Act, has warned that attempts to

fashion perpetual copyright from the DMCA (which enacted Section 1202) could create future problems. *Dastar*, 539 U.S. at 34; *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 444–45 (2d Cir. 2001). Likewise, Plaintiffs attempt to use "state law protection [which] would conflict with the federal policy of allowing free copying of all [works] in the public domain." *Decorative Aides Corp. v. Staple Sewing Aides Corp.*, 497 F. Supp. 154, 160 (S.D.N.Y. 1980), *aff'd*, 657 F.2d 262 (2d Cir. 1981) (citing cases). For the reasons demonstrated above, these attempts conflict with federal copyright policy.

Finally, Plaintiffs' claim that referencing photo collections is somehow improper is in direct contravention of well-established credit practices in both the publishing and licensing industries to credit collection sources as well as photographers, as amply illustrated in Plaintiffs' own Exhibits. *See, e.g.,* FAC ¶ 18.c, Exs. C-F. But under Plaintiffs' reading of Section 1202, parties who adhere to such standards, including the educational publishers referenced in Plaintiffs' Exhibits, could be in violation of federal law. FAC Exs. D, F. Allowing Plaintiffs' claims to stand would upend the expectations and decades-long practice of countless publishers and image licensees; such a result cannot be intended by either federal or state law.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants respectfully request that the First Amended Complaint be dismissed in its entirety with prejudice.

Respectfully submitted,


By:  /s/ Nancy E. Wolff

Nancy E. Wolff
Lindsay W. Bowen
Brittany L. Kaplan
COWAN, DEBAETS, ABRAHAMS &
SHEPPARD LLP
41 Madison Avenue, 38th Floor
New York, NY 10010
Telephone:  (212) 974-7474

*Attorneys for Defendants Alamy Ltd.,*
*Alamy Inc., and License Compliance*
*Services, Inc.*